In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2535

Tony Brummett,

Plaintiff-Appellant,

v.

Lee Enterprises, Inc. d/b/a
The Decatur Herald and Review,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-2154--Michael P. McCuskey, Judge.

Argued February 25, 2002--Decided March 25, 2002


  Before Posner, Easterbrook, and Williams,
Circuit Judges.

  Williams, Circuit Judge.   In this Title
VII case, we apply the familiar burden-
shifting standards of McDonnell Douglas
v. Green, 411 U.S. 792 (1973) to
plaintiff Tony Brummett's claim of racial
discrimination by former employer Decatur
Herald and Review ("the Herald"). The
district court granted summary judgment
to the Herald, finding that Brummett
failed to make out a prima facie case of
discrimination under McDonnell Douglas.
At oral argument, Brummett argued that we
should bypass the first prong of
McDonnell Douglas by merging his prima
facie claim of discrimination into his
claim that his employer's stated reasons
for terminating him were pretextual.
Although we reject Brummett's analysis as
applied to the facts of this case and
affirm the judgment below, we write to
clarify when a merger analysis is
appropriate.

I.  BACKGROUND

  Plaintiff Tony Brummett is an African-
American man and an alleged victim of
racial discrimination. He formerly worked
as a district sales manager and later as
an advertising salesman with the Herald,
a daily newspaper circulated in the

metropolitan area of Decatur, Illinois. Brummett's advertising responsibilities with the Herald required a substantial amount of driving to client sites to facilitate and maintain client-based relationships. According to the Herald's official policy, "a valid driver's license and a good driving record are conditions of employment for those who must drive on company business."

The fact pattern in this case is not in serious dispute. During Brummett's employment with the Herald, the Herald became aware of two incidents involving Brummett's use of a motor vehicle while under the influence of alcohol. As a result, the Herald warned Brummett that: a) his employment depended upon his maintaining a clean driving record and b) his excessive drinking could result in his dismissal under their strict good-driving policy. Not long after, Brummett was again arrested for driving under the influence of alcohol. Because he exercised his right to refuse a field sobriety test, his driver's license was immediately suspended. The only issue in dispute before the district court was Brummett's contention that he immediately reported his arrest to his supervisor at the Herald. The Herald, on the other hand, asserted that it initially found out about Brummett's arrest through other sources. At any rate, Brummett was terminated by the Herald several weeks after the latest arrest came to its attention. When informing him of his termination, the Herald cited Brummett's lack of a driver's license and his failure to report his D.U.I. arrest as their cause.

Feeling that he was given short shrift, Brummett sued the Herald, claiming that he was terminated because of his race. The district court, in a well-reasoned and thoughtful opinion, granted summary judgment to the Herald, finding that Brummett could not establish a prima facie case of racial discrimination under McDonnell Douglas, and that he failed to provide any direct or indirect evidence that the Herald's neutral explanation for his termination was subterfuge for the company's racial discrimination.

II.  ANALYSIS

Brummett claims that because the parties

disagree as to whether he, in fact, told his supervisor that he was arrested, he has presented a material issue of disputed fact. According to Brummett, because the defendant proffered two reasons for his discharge, a dispute as to the validity of one of them entitles him to reach the jury. This is simply not so.

Lacking any direct evidence of racial animus, Brummett relies on the burden-shifting framework of McDonnell Douglas in a creative fashion. However, he puts the pretext cart before the prima facie horse. As we have set out countless times, the prima facie test under McDonnell Douglas requires the plaintiff to establish four things, that: 1) he belongs to a protected class; 2) his performance met his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) similarly situated others not in his protected class received more favorable treatment. See, e.g., Coco v. Elmwood Care, Inc., 128 F.3d 1177 (7th Cir. 1997). The plaintiff must meet each prong of the prima facie test before it becomes necessary to reach the issue of pretext. Id. at 1179.

However, in limited circumstances, a plaintiff may be able to meet the second part of the prima facie case without showing that he met his employer's legitimate expectations. As we explained in Fuka v. Thomson Consumer Electronics, 82 F.3d 1397, 1404 (7th Cir. 1996), an individual who meets the other criteria for a prima facie case and also demonstrates that the employer's legitimate expectations were themselves pretextual can survive the first prong of McDonnell Douglas. Under those circumstances, the prima facie case is subsumed into one of establishing pretext under McDonnell Douglas's third prong. We have also considered this merger analysis appropriate in cases where the reason for the employee's termination was alleged to be a sham designed to hide the employer's discriminatory purpose. See Vakharia v. Swedish Covenant Hospital, 190 F.3d 799, 807 (7th Cir. 1999).

To make a credible argument for merger in this case, Brummett has to show that the Herald's legitimate expectation of an employee's good-driving record was

instead a pretextual policy cloaked in the shadow of racial discrimination. Under no circumstances can Brummett make this showing. The good-driving policy is so clearly related to Brummett's job (and many others at the Herald) that its neutrality is obvious on its face. As we have previously said, "we will not second-guess an employer's policies that are facially legitimate." See Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1035 (7th Cir. 1999).

Therefore, to meet his prima facie case, Brummett must demonstrate that he met the Herald's good-driving requirements at the time of his termination. The Herald requires that all salespeople, regardless of race, have a valid driver's license and a favorable driving record. At the time of his termination, Brummett had neither. His license had been suspended for a minimum of six months, and this was not his first dangerous driving offense. Despite these problems, he argues that he eventually received a driver's permit, which would have permitted him to drive on the job under limited circumstances. This is of no consequence. Whether the plaintiff ultimately would or could have found some remedial solution to his employer's legitimate expectations is not the issue under the first prong of McDonnell Douglas. The issue is simply whether Brummett was "meeting his employer's expectations at the time of the discharge." See Anderson v. Stauffer Chemical Co., 965 F.2d 397 (7th Cir. 1992) (italics in original). In other words, at the time of his termination, could Brummett have legally driven by himself to the Herald's various advertising client sites? The undisputed answer is no.

The real issue here is that Brummett wanted the Herald to cut him more slack and to arrange creative long-term solutions to his driving dilemma. However, the Herald was under no obligation to bend over backwards to assist its employees with their job-related difficulties, especially difficulties caused by their own wrongdoing. The Herald expected that all sales employees be able to drive--and safely. Because the plaintiff failed to show that he was able to meet these legitimate expectations, he fails to make out even a prima facie case of

discrimination./1

III.  CONCLUSION

   For the foregoing reasons, we AFFIRM the district court's judgment in favor of the defendant.

FOOTNOTE

/1 Also lacking evidence of pretext, Brummett fails the third prong of McDonnell Douglas as well. See, e.g., Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir. 1996). We have undertaken a careful review of the record below, and there is simply no evidence that Brummett's race had anything to do with his termination. It is not enough that he is African-American, was disliked, and was fired; he must present some evidence, direct or indirect, that he was fired because of his race. For example, his theory that he was fired because of his confrontation with a third party--even if true--has nothing to do with his race.