Charles E. WILKERSON, Plaintiff–Appellant,

v.

SPRINGFIELD PUBLIC SCHOOL DISTRICT NO. 186, Defendant–Appellee.

No. 01–489.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 2002.

Decided July 3, 2002.

Before COFFEY, RIPPLE, KANNE, Circuit Judges.

## ORDER

Charles Wilkerson, *pro se*, appeals the district court's grant of summary judgment in his Title VII suit alleging that he was forced to resign from his job because of his race and that he was subjected to a hostile work environment. The district court concluded that Wilkerson had presented no evidence of racial discrimination or of a hostile work environment and we affirm.

## BACKGROUND

The Springfield, Illinois, Public School District (District) hired Wilkerson, an African–American, as a custodian in 1984. He worked at several schools in the district and was transferred in December 1997 to Washington School in Springfield, where he was head custodian. Wilkerson stated in his deposition that he had never experienced racial discrimination by the District before working at Washington.

Some time before the beginning of the 1998–99 school year, the District hired a Caucasian woman, Kathryn Hofman, to work as a custodian for Wilkerson. Wilkerson's deposition, and the depositions of other school employees, state generally that Hofman did not like Wilkerson and wanted his job. One school employee stated in a deposition that Hofman "plotted" with cafeteria employees against Wilkerson, for example, by spreading a rumor that he was stealing money from vending machines.

Wilkerson states in his brief that on one day in fall 1998 he entered the school kitchen and saw Hofman and other school employees holding hot dogs and telling sexual jokes. Joining the group, Wilkerson picked up a hot dog, held it in front of his pants, and told sexual jokes along with the others. Then he and Hofman went together to another employee's office to tell her the jokes. No one complained about the incident at the time.

Wilkerson presented evidence of another incident that fall that he believes is material to his case. One day while viewing school security videotapes, Wilkerson discovered that the District was secretly videotaping the school's main office and the classroom of an African–American teacher who the District suspected of theft. The teacher was cleared of suspicion, but the school's African–American principal thereafter resigned for reasons not apparent

from the record. Wilkerson seems to believe that this incident demonstrates racism by the District.

Several months later Hofman filed a complaint with District officials that Wilkerson sexually harassed her on three occasions. She described the hot dog incident as well as two occasions when Wilkerson allegedly used inappropriate sexual language in front of students. · In response to the complaint, District Assistant Superintendent Gary Sullivan called Wilkerson to a meeting with Wilkerson's supervisor, Anthony Kamnick, and union president, David Shipley. Sullivan told Wilkerson that based on the complaint he would be reprimanded and that he could be suspended or terminated. Wilkerson talked with Shipley immediately after the meeting and asked him what to do. Wilkerson's deposition states that Shipley responded, "As far as I'm concerned, you're screwed." Wilkerson submitted a signed letter of resignation that day, turned in his keys, and did not return to work. The District's personnel office stamped his resignation with an "effective date" of June 10.

On June 16 Wilkerson received a reprimand in the mail from Sullivan. Later that day Wilkerson called Kamnick, his supervisor, to rescind his resignation. According to Wilkerson, Kamnick told him that he was too late because the school board had already accepted the resignation. Kamnick misspoke, however—the school board did not vote to accept the resignation until a meeting several days later on June 21. The record does not reveal whether the board was aware that Wilkerson wanted to rescind his resignation. The District had no express policy on resignations, but in the previous ten years it had never rescinded a resignation after the resignation's effective date. Moreover, in the eleven cases where employees had rescinded their resignations,

the employees at the time either were still working or on an approved leave of absence. Wilkerson, in contrast, stopped working on June 10 and was not on a leave of absence.

## DISCUSSION

### 1. Constructive Discharge

Wilkerson argues that he presented adequate evidence of racial discrimination to withstand summary judgment. He does not contend that there is any direct evidence of discrimination, so he must establish a *prima facie* case of race-based discrimination. *Brummett v. Lee Enters., Inc.*, 284 F.3d 742, 744 (7th Cir.2002). To do this, Wilkerson must show that 1) he is a member of a protected class; 2) he performed his job satisfactorily; 3) he suffered an adverse employment action; and 4) the District treated similarly situated employees outside his protected class differently. *Id.* At issue are the last two of these criteria.

Wilkerson first argues that he suffered an adverse employment action. Because Wilkerson resigned from his position rather than being fired, he can only show an adverse employment action if he was constructively discharged. That is, he must demonstrate that he effectively was forced to resign because he reasonably believed that his working conditions were intolerable. *See EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir.2002). Although constructive discharge is usually associated with particularly egregious discriminatory harassment, a plaintiff can also demonstrate constructive discharge where an employer communicates to a reasonable employee that he or she will be fired and the employee resigns in response. *Id.* at 331–32.

█ Wilkerson contends that he was constructively discharged at his meeting with Sullivan and Shipley. According to Wilkerson, Sullivan told him at the meet-

ing that Hofman's complaint against him was grounds for termination, and Shipley told him after the meeting that he was "screwed." Believing that he would soon be fired, Wilkerson claims that he responded by resigning. But the District Assistant Superintendent's telling Wilkerson that he *could* be fired is not constructive discharge. *See, e.g., Univ. of Chicago Hosps.*, 276 F.3d at 332 (plaintiff was constructively discharged where her belongings in her office were packed, another employee warned her that her supervisor was planning to fire her, and the plaintiff's evaluations deteriorated quickly after that supervisor was hired); *Henn v. Nat'l Geographic Soc'y*, 819 F.2d 824, 830 (7th Cir. 1987) (no constructive discharge where employees were warned they could be disciplined or fired if they continued failing to meet sales quotas). Wilkerson has presented no evidence that he *would* have been fired had he not resigned, only that Sullivan told him he *could* be fired, and thus he cannot show constructive discharge.

■ Wilkerson also seems to argue that he suffered an adverse employment action when the District refused to allow him to rescind his resignation. Adverse employment actions are typically events such as termination, demotion, suspension, failure to promote, or decreased pay. *See Markel v. Bd. of Regents of Univ. of Wisconsin System*, 276 F.3d 906, 911 (7th Cir.2002) (declining to decide whether employer's refusal to renew employment contract could constitute constructive discharge). But the District was under no duty to allow Wilkerson to rescind his resignation after he submitted his signed resignation, turned in his keys, and stopped working. The district court correctly determined that the District never took an adverse employment action against Wilkerson. Because there was no adverse employment action, Wilkerson was not constructively discharged.

### 2. Hostile Work Environment

■ Wilkerson also argues that he was subjected to a hostile work environment, but does not explain what acts made the environment hostile. A hostile work environment exists only where the conduct in question is so severe and pervasive that it alters the plaintiff's conditions of employment. *See Hilt–Dyson v. Chicago*, 282 F.3d 456, 462–63 (7th Cir.2002). The conduct must be both objectively and subjectively hostile and abusive. *Id.* at 463. But Wilkerson's conclusory assertion that his work environment was hostile does not provide us with any basis for evaluating his claim. Although the court construes *pro se* filings liberally, even *pro se* litigants must present a coherent argument and support it with legal authority. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir.2001). Wilkerson has done neither with respect to his hostile work environment claim.

AFFIRMED