Loretta LEE, Plaintiff–Appellant,

v.

**CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, Defendant–Appellee.**

No. 01–2903.

United States Court of Appeals, Seventh Circuit.

Argued July 9, 2002.

Decided July 31, 2002.

980

Before POSNER, RIPPLE, and WILLIAMS, Circuit Judges.

### ORDER

Loretta Lee, an African–American employee of the Chicago School Reform Board of Trustees ("Board"), sued the Board under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2)(A)-(C), for terminating her based on race and disability. The district court granted summary judgment for the Board, and Lee appeals only the ruling on her Title VII claim. We affirm.

### BACKGROUND

Lee began working for the Board as a school nurse in 1979. In 1994 she was appointed director of Student Health Services at the Board's central office. She reported directly to Charlene Vega, the head of the Board's Pupil Support Services Department. Vega in turn reported to Sue Gamm, Chief of Specialized Services.

On March 10, 1997 Vega learned that one of the Board's school bus drivers had died of meningitis. Because she expected a large number of inquiries from panicked parents, Vega implemented health crisis precautions and notified her staff of the need to ensure adequate personnel coverage at all schools. At about 8:00 p.m. that night, Vega directed Eleida Gomez, director of the Board's City Wide Services department, to contact Lee and inform her that she was assigned to work at Farragut High School the following day. Gomez called Lee twice that evening and left messages instructing her to report to work at 7:00 a.m. for a staff meeting.

On March 11 Lee arrived at work at 9:00 a.m., two hours late. Vega and Gomez met with Lee and expressed their concern about her tardiness. At Vega's direction, Lee then left to work at Farragut High School. During the day, Lee began to experience health problems of her own, including a headache and numbness in her arm. By 5:00 p.m., her symptoms became serious, though she did not discuss them with anyone. The following day, Lee did not report to work because of her headache. She instead called her secretary, who transferred her to Vega's secretary, to whom she reported her absence. On March 13 Lee was still feeling sick and she again reported her illness to Vega's secretary. On March 14 Lee was able to see a doctor, who diagnosed her as having anxiety, high blood pressure, and "hypertension new onset." The doctor also told her that she could perform her job duties with these conditions.

After Vega met with Gamm to discuss her concerns about the repeated absences and failure to personally contact her su-

pervisors, Gamm decided to arrange a meeting with Lee. Instead of attending the meeting, Lee called Vega's secretary to explain that she was unable to report to the meeting because of her medical situation. The secretary transferred the call to Gamm, and Lee told her that a doctor had advised her to take several weeks off of work because of high blood pressure. Gamm asked for the doctor's phone number so that she could verify this claim, but Lee refused to provide it, citing privacy concerns. Lee told Gamm, however, that she had a doctor's note to give to her.

After consulting with the Board's Human Resources department, which informed her that Lee was an at-will employee, Gamm prepared a termination letter and sent it to Lee's home. Gamm apparently was unaware that Lee had filed for a leave of absence that same day. A month later, Lee filed a charge of discrimination with the Equal Employment Opportunity Commission, which issued a Right–To–Sue letter, and Lee then filed this suit claiming that the Board violated Title VII and the ADA.

## DISCUSSION

Lee's principal argument on appeal is that the district court erred in concluding that she did not meet her burden of demonstrating that the Board's reasons for terminating her—abandonment of her job duties and insubordination in refusing to provide her doctor's contact information for verification of her medical condition—were simply a pretext for discrimination. Lee has conceded that she can point to no direct evidence of race discrimination, and we therefore proceed using the *McDonnell Douglas* indirect method of proof, which requires that (1) the plaintiff must establish a prima facie case of discrimination, (2) the defendant must articulate a legitimate, non-discriminatory reason for its

employment action, and (3) the plaintiff must demonstrate that the employer's proffered reason is a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Brummett v. Lee Enters., Inc.,* 284 F.3d 742, 744 (7th Cir. 2002). Lee must rebut the Board's stated reasons by showing that they had no basis in fact, *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir.1996), or that the Board did not "honestly believe" in the nondiscriminatory reasons it offered. *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 733 (7th Cir.2001).

Lee argues that the district court failed to consider three facts that she believes demonstrate that the Board's stated reasons for her termination were pretextual. First, Lee argues that the Board's failure to follow its own personnel policies when terminating her casts doubt on the Board's general credibility. Lee contends that she was an "administrator" under the terms of the Board's personnel policy, and as such, she could only be fired by the Chief Executive Officer or the Board after notice and a hearing. Gamm, a department head, terminated Lee without a hearing. Lee asserts in her brief on appeal that a failure to follow the Board's customary personnel policies supports an inference that there was "an effort to sweep the whole affair under the rug."

But as Lee concedes, the only question material to her Title VII claim is whether Gamm terminated Lee with an honest belief that she was an at-will employee. *See Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 467 (7th Cir.2002) (evidence plaintiff relies upon to establish pretext must be material to the employer's explanation), *petition for cert. filed,* 70 U.S.L.W. 3758 (U.S. May 28, 2002) (No. 01–1758). Even if Gamm was in fact incorrect about Lee's at-will status, Lee has introduced no evi-

dence that Gamm believed she was entitled to a hearing before her termination was finalized. In fact Lee's appellate brief acknowledges that Gamm consulted the Board's Human Resources department and was informed that Lee was an at-will employee who could be terminated without notice or a hearing. Lee never claims that Gamm did not believe this advice, only that it may not have been correct.

Second, Lee attempts to argue that Gamm's stated nondiscriminatory justifications are not credible because the termination was motivated by her "anger" with Lee for refusing to provide the name and telephone number of her doctor. But evidence that a termination was an ill-advised decision does not establish that the Board's articulated reason of insubordination was a pretext. Even if Gamm made a poor business decision due to her anger, Lee does not contest the fact that her insubordination itself was a legitimate, nondiscriminatory reason for her termination. *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 889 (7th Cir.2001); *Schaffner v. Glencoe Park Dist.,* 256 F.3d 616, 621 (7th Cir.2001); *Russell,* 51 F.3d at 68.

Third, Lee contends that the Board could not have honestly believed its reasons for terminating her because the decision was made hastily and without an investigation. She appears to argue that the quick action taken in deciding to fire her supports an inference that Gamm seized an opportunity to discharge an African–American manager. But Lee concedes that she refused to provide the name of her doctor when Gamm asked to verify her medical condition. Gamm was directly involved in this conversation and did not need to conduct an investigation to determine the facts. Moreover, Lee never cites any legal authority to show that any investigation is required to establish that an employer acted upon an honest belief. Rather she cites three cases in which an investigation was made and the court did find a sufficient basis for the employer's decision. *See Braithwaite v. Timken Co.,* 258 F.3d 488, 494 (6th Cir.2001); *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 629 (7th Cir.2001); *Green v. National Steel Corp.,* 197 F.3d 894, 899–900 (7th Cir. 1999). These cases, however, require that an employer engage in only minimal investigation to establish that its articulated reasons are honest. *See e.g., Pugh,* 259 F.3d at 629 ("Even if the action appears precipitous under the circumstances, we are not in a position to question the wisdom of a decision that was honestly made").

**AFFIRMED.**