Filed 4/19/17

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| RUTH FEATHERSTONE, | B275225 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC551005) |
| v. | |
| SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los
Angeles County, Gail R. Feuer, Judge.  Affirmed.

Rushovich Mehtani, Aanand Ghods-Mehtani and
Lisa M. Watanabe-Peagler for Defendant and Appellant.

Nixon Peabody, Michael R. Lindsay, Alicia C. Anderson
and Mae K. Hau for Plaintiff and Respondent.

_____

Ruth Featherstone (Featherstone) appeals from summary judgment entered against her on claims that her former employer, defendant and respondent Southern California Permanente Medical Group (SCPMG), refused to rescind her resignation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.[1]) and public policy.

Specifically, Featherstone alleged that while working for SCPMG she suffered a "temporary" disability, which arose as a result of a "relatively uncommon side effect of the medication" she was taking in late December 2013; this "adverse drug reaction" allegedly caused Featherstone to suffer from an "altered mental state." While under the influence of this altered mental state, Featherstone resigned from her position with SCPMG—first, she resigned orally in a telephone conversation with her supervisor and then, a few days later, confirmed her resignation in writing in an email to her supervisor. A few days after confirming her resignation in writing, Featherstone requested SCPMG to allow her to rescind her resignation. SCPMG, after considering Featherstone's request, declined to do so. Featherstone then sued, alleging that SCPMG acted with discriminatory animus by refusing to allow her to rescind her resignation.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

We affirm for two principal reasons.  First, SCPMG's refusal to allow Featherstone to rescind her resignation was not an adverse employment action under the FEHA.  Second, Featherstone failed to raise a triable issue of fact as to whether the SCPMG employees who accepted and promptly processed her resignation knew of her alleged temporary disability at the time they took those actions.  Because Featherstone failed to present evidence raising a triable issue of material fact about the legality of SCPMG's actions, summary judgment was appropriate.

## BACKGROUND

### I. Featherstone's employment with SCPMG

Featherstone began working for SCPMG as an "at-will" employee in 2009.  She reported to Vicky Sheppard (Sheppard).

Prior to joining SCPMG, Featherstone had suffered from chronic sinus conditions that had resulted in the development of an inverted papilloma tumor in her sinus cavity; between 1995 and 2008, she had five surgeries to treat the tumor.  Throughout her employment with SCPMG, Featherstone suffered from chronic sinusitis.

In October 2013, Featherstone's doctor informed her that she needed to have surgery based on changes in her sinus tumor.  SCPMG granted Featherstone leave to have and recover from the surgery.  Featherstone's medical leave extended to December 13, 2013.  On December 16, 2013, Featherstone returned to work without any work restrictions.

3

## II.    Featherstone's resignation from SCPMG

On December 23, 2013, at approximately 8:30 a.m., Featherstone called Sheppard and informed her that she was resigning from her employment with SCPMG effective immediately.  According to Sheppard, Featherstone told her that " 'God had told [her] to do something else.' "

Prior to Featherstone's resignation, neither Sheppard nor Sheppard's supervisor/manager were aware that Featherstone was suffering from an altered mental state. During their phone conversation, although Sheppard had to ask Featherstone to " 'slow down,' " she did not consider Featherstone to be "acting in a way that [she] would consider to be odd in any manner."  On that same day, Sheppard noticed a post by Featherstone on Facebook regarding her resignation that seemed "a little out of the blue," "a little erratic"—Featherstone indicated that she had resigned in order to "do God's work."  Featherstone's post, however, did not cause any concern in Sheppard's mind that Featherstone was not in her right mind when she resigned, because the reference to God was not inconsistent with Featherstone's character.

Following their conversation, Sheppard emailed Featherstone, asking her to confirm her resignation in writing and then informed her supervisor/manager and SCPMG's human resources department of Featherstone's resignation.  SCPMG's human resources department instructed Sheppard to immediately process Featherstone's termination paperwork so that Featherstone could receive

her final paycheck and other discharge-related paperwork in a timely manner. Sheppard's supervisor/manager completed and submitted Featherstone's voluntary termination paperwork later that same day.[2] The paperwork indicated, inter alia, that Featherstone was eligible to be rehired by SCPMG.

On December 26, 2013, Featherstone responded to Sheppard's email, confirming her decision to resign effective December 23, 2016.

## III. Featherstone's hospitalization

On or about December 21, 2013, Featherstone's behavior at home began to progressively change. For example, Featherstone "took off her clothes and walked around naked in front of others, repeatedly and uncharacteristically swore at family and friends, and took showers for no reason."

On December 24, 2013—one day after she resigned—Featherstone was hospitalized. On that same day, a friend and coworker of Featherstone spoke with Featherstone's sister, who advised the coworker of Featherstone's hospitalization. The coworker discussed the matter with her manager, who, because he was not Featherstone's manager, advised her to contact SCPMG's HR department. The HR department advised the coworker that it could not discuss

---

[2] To facilitate the speedy termination of the employment relationship, an employer is obligated to pay the employee's final wages within 72 hours. (Lab. Code, § 202.)

5

Featherstone's situation with her since she was not a member of Featherstone's family. After this one communication with the HR department, the coworker did not have any other communications with any other SCPMG employees about Featherstone's hospitalization or medical condition.

On December 26, 2013—the day she confirmed her resignation in writing—Featherstone was released from the hospital and transferred to a Kaiser mental health facility, which released her later that same day.

## IV. Featherstone's request to rescind her resignation

On or about December 31, 2013, Featherstone informed Eva Suarez (Suarez) in SCPMG's HR department that at the time of her resignation she was suffering from an adverse drug reaction and, as a result, requested that SCPMG allow her to rescind her resignation. Suarez told Featherstone to send her any documents that she wanted Suarez to review in connection with her rescission request.

On January 14, 2014, Featherstone sent an email to Suarez describing the events pertaining to her resignation. According to Featherstone, prior to her resignation she was taking Phenergan with codeine for a cough and that medication "caused her to do abnormal things." Her behavior became so abnormal that she was hospitalized for 72 hours.[3] Featherstone further stated that she was told by

---

[3] In her email, Featherstone states that she was placed on a "5150." Section 5150 of the Welfare and Institutions Code authorizes a qualified officer or clinician to

a doctor on December 25, 2013, that she had "PCP and cocaine in her system that caused [her] to behave so wildly due to the Phenergan with codeine." Attached to her email was a note from Dr. An Hong Tran dated January 3, 2013, which seemingly both confirmed and contradicted Featherstone's email. Dr. Tran confirmed that Featherstone had been hospitalized "due to a behavioral change that resulted from an adverse reaction from medication phenergan with codeine." Dr. Tran, however, also stated that "[o]n confirmatory test, [Featherstone] does not have any PCP or cocaine."

After considering the email supporting Featherstone's rescission request and consulting with SCPMG's legal counsel, Suarez determined that there was nothing improper about SCPMG's acceptance of Featherstone's resignation on December 23, 2013 and that there were no facts requiring SCPMG to allow Featherstone to rescind her resignation. On January 21, 2014, Suarez notified Featherstone that SCPMG would not accede to her request.

At no point following her resignation did Featherstone reapply for her prior position with SCPMG.

---

involuntarily confine a person suspected to have a mental disorder that makes them a danger to themselves, a danger to others, and/or gravely disabled for up to 72 hours.

# DISCUSSION

## I.    Standard of review

We review an order granting summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 768.) We accept as true both the facts shown by the losing party's evidence and reasonable inferences from that evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)

Summary judgment is appropriate only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party

8

opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 850, 856.)

## II. Summary judgment and employment discrimination claims

In an employment discrimination case, an employer may move for summary judgment against a discrimination cause of action with evidence of a legitimate, nondiscriminatory reason for the adverse employment action. (*Guz, supra*, 24 Cal.4th 317, 357.) A legitimate, nondiscriminatory reason is one that is unrelated to prohibited bias and that, if true, would preclude a finding of discrimination. (*Id.* at p. 358.) The employer's evidence must be sufficient to allow the trier of fact to conclude that it is more likely than not that one or more legitimate, nondiscriminatory reasons were the sole basis for the adverse employment action. (*Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097–1098.)

By presenting such evidence, the employer shifts the burden to the plaintiff to present evidence that the employer's decision was motivated at least in part by prohibited discrimination.[4] (*Guz, supra*, 24 Cal.4th at

---

[4] This burden-shifting test is derived from the three-stage burden-shifting test established by the United States Supreme Court for use at trial in cases involving claims, such as those at issue here, of employment discrimination based on disparate treatment, known as the *McDonnell Douglas* test (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792; *Guz, supra*, 24 Cal.4th at pp. 354, 357.) A plaintiff

pp. 353, 357.) The plaintiff's evidence must be sufficient to support a reasonable inference that discrimination was a substantial motivating factor in the decision. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232; *Guz*, at pp. 353, 357.) The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive. (*Guz*, at p. 362 & fn. 25.)

Although an employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally, it "remains subject to careful scrutiny." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) The employee's "subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*Ibid*.) The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, "an actual causal link between

---

has the initial burden at trial to establish a prima facie case of employment discrimination. (*Guz*, at p. 354.) On a summary judgment motion, in contrast, a moving defendant has the initial burden to show that a cause of action has no merit (Code Civ. Proc., § 437c, subd. (p)(2)) and therefore has the initial burden to present evidence that its decision was motivated solely by legitimate, nondiscriminatory reasons. (*Kelly v. Stamps.com Inc.*, *supra*, 135 Cal.App.4th at pp. 1097–1098.)

10

prohibited motivation and termination." (*Id.* at pp. 433–434.)

To show that an employer's reason for termination is pretextual, an employee " 'cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.' " (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.) To meet his or her burden, the employee " 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," ' " and hence infer " 'that the employer did not act for [the asserted] non-discriminatory reasons.' " (*Ibid.*) "[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*. Thus, 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*." (*Guz, supra*, 24 Cal.4th at p. 358.)

In short, where the case has been decided on summary judgment, " ' "[i]f the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is

lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing." ' " (*Arteaga v. Brink's, Inc.* (2008)163 Cal.App.4th 327, 344, italics omitted.)

## III. Summary judgment was properly granted on all of Featherstone's employment discrimination claims

In her operative complaint, Featherstone alleged five causes of action: (a) unlawful discrimination based on disability in violation of FEHA; (b) failure to prevent unlawful discrimination in violation of FEHA; (c) failure to accommodate a disability in violation of FEHA; (d) failure to engage in the interactive process to determine a reasonable accommodation in violation of FEHA; and (e) wrongful termination in violation of public policy.

As discussed more fully below, Featherstone failed to meet her prima facie burden with respect to each of those claims.

A. SCPMG WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON FEATHERSTONE'S DISABILITY CLAIM

FEHA provides, in relevant part, that "[i]t is an unlawful employment practice. . . . [¶] (a) For an employer, because of the . . . physical disability [or] medical condition . . . of any person, to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . ." (§ 12940, subd. (a); see *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920,

12

925–926.)  FEHA proscribes two types of disability discrimination:  (1) discrimination arising from an employer's intentionally discriminatory act against an employee because of his or her disability (referred to as disparate treatment discrimination), and (2) discrimination resulting from an employer's facially neutral practice or policy that has a disproportionate effect on employees suffering from a disability (referred to as disparate impact discrimination).  (*Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 128–129, disapproved on other grounds in *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115.)  In opposing SPMG's motion for summary judgment, Featherstone asserted only disparate treatment discrimination.

To establish a prima facie case for disparate treatment discrimination, plaintiff must show (1) she suffers from a disability, (2) she is otherwise qualified to do her job, (3) she suffered an adverse employment action, and (4) the employer harbored discriminatory intent.  (See *Guz*, *supra*, 24 Cal.4th at p. 355.)

Assuming arguendo that a temporary disability, such as the one Featherstone allegedly suffered from, qualifies as a disability under FEHA,[5] summary judgment in favor of

_____

[5] See *Diaz v. Federal Express Corp.* (C.D.Cal. 2005) 373 F.Supp.2d 1034.  In *Diaz*, the plaintiff was diagnosed with an "Adjustment Disorder with Mixed Anxiety and Depressed Mood" and had several bouts with depression, anxiety.  (*Id.* at pp. 1040–1042.)  The defendant moved for summary

SCPMG on Featherstone's disability claim was appropriate because refusing to allow a former employee to rescind a voluntary discharge—that is, a resignation free of employer coercion or misconduct—is not an adverse employment action.

---

judgment, claiming the plaintiff suffered from a temporary disability under the FEHA and sought to have the federal district court apply a categorical exclusion based on the short duration of the condition. (*Id*. at pp. 1047–1048.) The district court in *Diaz*, after examining the language of FEHA, the legislative history of its 2001 amendments, and the relevant case law, rejected the defendant's arguments, concluding that "the trier of fact will need to determine whether Plaintiff's condition, although temporary, constituted a disability." (*Id*. at p. 1053.) However, the *Diaz* court felt obliged to acknowledge that exclusion of the "durational issue" from FEHA analysis would lead to "absurd" results: "every citizen in California who suffered from a cold, the flu, or the degree of stress or depression that most employees in the workplace experience would be 'disabled' under the FEHA." (*Id*. at 1052; see 29 C.F.R. § 1630.15(f) ["transitory and minor impairments" are a defense to ADA discrimination claims].) Because the issue of whether Featherstone's alleged temporary disability should be considered a disability under FEHA was not raised in connection with SCPMG's motion for summary judgment, we decline to consider it here.

1. *Absent evidence of constructive discharge or contractual obligation, refusal to allow rescission is not an adverse employment action*

In *Yanowitz v. L'Oreal USA Inc.* (2005) 36 Cal.4th 1028, our Supreme Court recognized that what constitutes an adverse employment action "is not, by its nature, susceptible to a mathematically precise test," and, as a result, "the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee." (*Id.* at p. 1054.) *Yanowitz*, nonetheless, defined an adverse employment action generally as one that "materially affect[s] the terms, conditions, or privileges of *employment.*" (*Id.* at p. 1051, fn. 9, italics added; see generally *id.* at pp.1049–1055.) "[T]he determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." (*Id.* at p. 1052.) "[T]he phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide." (*Id.* at p. 1054.) The protections against discrimination in the workplace therefore are "not limited to adverse employment actions that impose an economic detriment or inflict a tangible psychological injury upon an employee." (*Id.* at p. 1052.)

15

Rather, FEHA "protects an employee against unlawful discrimination with respect . . . to . . . the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." (*Id.* at pp. 1053–1054.) "[T]here is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries." (*Id.* at p. 1055.) Thus, "it is appropriate to consider plaintiff's allegations collectively under a totality-of-the circumstances approach." (*Id.* at p. 1052, fn. 11.)

In sum, given the focus in *Yanowitz v. L'Oreal USA Inc.*, *supra*, 36 Cal.4th 1028 on guarding against employer conduct that materially affects an employee's job performance and/or opportunity for advancement, an adverse employment action is one that affects an employee, not a former employee, in the terms, conditions or privileges of his or her employment, not in the terms, conditions or privileges of his or her unemployment.

The text of FEHA is silent with respect to whether an employer's refusal to allow a former employee to rescind a resignation constitutes an adverse employment action. Moreover, the parties have not directed us to, and we are not aware of, any California appellate decisions addressing this issue. However, we are not without recourse to other authorities for guidance. As our Supreme Court has stated, "Because of the similarity between state and federal employment discrimination laws, California courts look to

16

pertinent federal precedent when applying our own statutes." (*Guz*, *supra*, 24 Cal.4th at p. 354.) Two such federal laws are the Federal Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.) and title VII of the federal Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.). (See *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 56–57; *Walker v. Blue Cross of California* (1992) 4 Cal.App.4th 985, 997–998, disapproved on other grounds in *Guz*, *supra*, 24 Cal.4th 317.)[6]

---

[6] In undertaking this analysis, we are mindful of the fact that the ADA provides only a "floor of protection" and that FEHA not only "provides protections independent from those in the[ADA]" but also "afford[s] additional protections" from those provided by the ADA. (§ 12926.1, subd. (a).) Nonetheless, "[b]ecause the ADA and FEHA share the goal of eliminating discrimination, we often look to federal case authority to guide the construction and application of FEHA." (*Gelfo v. Lockheed Martin Corp.*, *supra*, 140 Cal.App.4th at pp. 56–57.) Moreover, where federal courts have addressed issues involving employment discrimination that California courts have yet to consider, those federal decisions "provide substantial guidance." (*Id.* at p. 55.) In addition, as our Supreme Court has noted, " 'conformity [to the ADA rules] will benefit employers and businesses because they will have one set of standards with which they must comply in order to be certain that they do not violate the rights of individuals with physical or mental disabilities.' " (*Green v. State of California* (2007) 42 Cal.4th 254, 263.)

17

In ruling on summary judgment motions, federal district courts have regularly found in employment discrimination cases brought pursuant to the ADA, Title VII, and related federal and state civil rights statutes (such as title 42 United States Code sections 1981 and 1983) that "[a]n employer's refusal to allow an employee to rescind his [or her] resignation . . . [is] *not* . . . an adverse employment action." (*Williams v. Rowan University* (D.N.J. Dec. 11, 2014, Civil No. 10–6542 (RMB/AMD) 2014 WL 7011162, at *9 [granting summary judgment on 42 U.S.C. §§ 1981, 1983 claims].)

The reason why "[a]n employee who voluntarily resigns cannot show that he or she has suffered an adverse employment decision" is self-evident: refusing to accept rescission of a resignation is "not an adverse employment action for the simple reason that the *employment relationship has ended.*" (*Schofield v. Metropolitan Life Ins. Co.* (M.D.Pa. Sept.15, 2006, No. 03–357) 2006 WL 2660704 at *8-9, italics added [granting summary judgment on ADA claim]; *Hammonds v. Hyundai Motor Mfg. Ala. L.L.C.* (M.D.Ala. June 28, 2011, No. 2:10–cv–103) 2011 WL 2580168, at *4 ["voluntary resignation is not an adverse employment action" (title VII case)].)

In *MacLean v. City of St. Petersburg* (M.D.Fla. 2002) 194 F.Supp.2d 1290, the district court granted summary judgment in favor of the defendant employer in a Title VII action, finding that, unless "the employer forces the [employee's] resignation by coercion or duress" or "obtains

the resignation by deceiving or misrepresenting a material fact," an employee's resignation is "presumed to be voluntary," and, therefore, the employer's "failure to accept [the employee's] rescission of her voluntary resignation [is] not an adverse employment action." (*Id.* at p. 1299.)

Federal appellate courts have reached similar conclusions. For example, the Sixth and Eight Circuits have held that an employee cannot voluntarily submit a resignation and then claim the employer's acceptance of the resignation is an adverse employment action. (See *Jones v. Butler Metropolitan Housing Auth.* (6th Cir. 2002) 40 Fed.Appx. 131, 137 [title VII action]; *Hammon v. DHL Airways, Inc.* (6th Cir. 1999) 165 F.3d 441, 450 [ADA case]; *Curby v. Solutia, Inc.* (8th Cir. 2003) 351 F.3d 868, 872 [title VII case].)[7]

In *Wilkerson v. Springfield Public School Dist. No. 186* (7th Cir. 2002) 40 Fed.Appx. 260, the Seventh Circuit focused on the voluntary nature of the resignation (i.e., the absence of employer coercion) and the absence of any contractual obligation to allow rescission. In that case, the Court of Appeals affirmed summary judgment in favor of a defendant employer and against a former employee who argued that he suffered an adverse employment action when the employer refused to allow him to rescind his resignation.

---

[7] But see *Porter v. Houma Terrebonne Housing Auth. Bd. of Comm'rs* (5th Cir. 2015) 810 F.3d 940, 945–947 [in retaliation action failure to accept rescission may be adverse employment action].)

19

The *Wilkerson* court explained its decision as follows: "Adverse employment actions are typically events such as termination, demotion, suspension, failure to promote, or decreased pay. [Citation.] But the [the employer] was under *no duty* to allow [the plaintiff-employee] to rescind his resignation after he submitted his signed resignation, turned in his keys, and stopped working." (*Id*. at 263, italics added.) In other words, if the parties' contract does not permit an employee to rescind his or her voluntary resignation, the employer does not commit an adverse employment action by refusing to allow rescission.

2. *SCPMG did not coerce Featherstone's resignation*

Featherstone does not allege constructive discharge—that is, she does not allege that SCPMG coerced or otherwise improperly pressured her to resign.[8] Nor can it be inferred that her resignation was actually a constructive discharge. On the record before us the evidence does not show or even suggest that SCPMG made or allowed Featherstone's working conditions to become "intolerable." (*Turner v.*

---

[8] "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1244–1245.)

*Anheuser-Busch, supra*, 7 Cal.4th at p. 1247.) Indeed, the facts strongly suggest the opposite—that is, conditions at SCPMG were so tolerable that Featherstone sought to stay with the company by asking to rescind her resignation. (See, e.g., *Trinidad v. New York City Dept. of Correction* (S.D.N.Y.2006) 423 F.Supp.2d 151, 168 [employee's request for reinstatement established that working conditions were not intolerable]. In fact, Featherstone testified at her deposition that her job at SCPMG was "one of the best positions" she ever had.

To the extent, Featherstone's resignation was coerced, it was apparently coerced by an adverse drug reaction, not by anything SCPMG did or failed to do.

### 3. *SCPMG was not contractually obligated to permit rescission of Featherstone's resignation*

Here, there is no evidence that SCPMG was under any contractual duty to allow Featherstone to rescind her resignation after it had accepted it by processing the necessary paperwork. First, it is undisputed that Featherstone was an "at-will" employee. Second, there is nothing in the record before us establishing or even suggesting that SCPMG and Featherstone had contracted for some arrangement amending her at-will status so as to require SCPMG to allow her to rescind her resignation even after it had accepted her resignation on the same day that it was tendered. These two facts mean that the normal rules governing resignations by at-will employees applied.

21

"An at-will employment may be ended by either party 'at any time without cause,' for any or no reason, and subject to no procedure except the statutory requirement of notice." (*Guz, supra,* 24 Cal.4th at p. 335; Lab. Code, § 2922.) Because the " 'the employment relationship is fundamentally contractual' " (*Guz, supra,* 24 Cal.4th at p. 336), California courts have similarly held that "[r]esignations are contractual in nature." (*Mahoney v. Board of Trustees* (1985) 168 Cal.App.3d 789,799.) "As such, a resignation is an offer which may be withdrawn *prior* to its acceptance." (*Ibid.*, italics added; Civ. Code, § 1586; *T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 278.) In other words, "[u]nder California law, an employee has a right to rescind a resignation unilaterally (like any contract offer) only *prior to its acceptance.*" (*Ulrich v. City and County of San Francisco* (9th Cir. 2002) 308 F.3d 968, 975.)

As one federal district court has stated, "in the absence of a duty to permit an employee to rescind his resignation, it is not an adverse employment action—for the purposes of a discrimination claim or a retaliation claim—for an employer to take the employee at his word that he wants out and not reinstate him if he changes his mind." (*Cadet v. Deutsche Bank Sec., Inc.* (S.D.N.Y. June 18, 2013, No. 11Civ.7964(CM)) 2013 WL 3090690, at *13.)

Under certain labor laws, an employer is required to investigate the circumstances surrounding an employee's request to alter his/her employment. For example, when an employee indicates a need for leave under the California

22

Family Rights Act (§ 12945.1 et seq.) (CFRA), " '[t]he employer should inquire further of the employee if necessary to determine whether the employee is requesting CFRA leave and to obtain necessary information concerning the leave (i.e., commencement date, expected duration, and other permissible information)." (Cal. Code Regs., tit. 2, § 11091, subd. (a)(1).)[9] But we are unaware of any similar duty for an employer to investigate the circumstances surrounding a voluntary resignation (i.e., one free of employer coercion) by an at-will employee.

Because Featherstone's rescission request was made *after* SCPMG accepted her resignation, SCPMG was under no contractual obligation to accede to her request. Accordingly, under the totality of the circumstances, SCPMG's refusal was not an adverse employment action. With Featherstone unable to establish one of the required elements of her prima facie case for employment discrimination, judgment as a matter of law in favor of SCPMG was appropriate.

B. SCPMG WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON FEATHERSTONE'S FAILURE TO PREVENT UNLAWFUL DISCRIMINATION CLAIM

Where, as here, a plaintiff cannot establish a claim for discrimination, the employer as a matter of law cannot be

---

[9] The federal analog to the CFRA, the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.) (FMLA), requires similar follow-up inquiry by the employer. (See, e.g., 29 C.F.R. § 825.302(c); 29 C.F.R. § 825.303(b).)

held responsible for failing to prevent same: " '[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen . . . .' " (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 288–289.)

On appeal, Featherstone does not dispute that her failure to prevent claim is entirely derivative of her disability discrimination claim. Because Featherstone cannot establish her underlying cause of action for disability discrimination, she cannot maintain a derivative claim for violation of section 12940, subdivision (k). Accordingly, the trial court properly granted judgment as a matter of law on Featherstone's failure to prevent discrimination claim.

C.     SCPMG WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON FEATHERSTONE'S FAILURE TO ACCOMMODATE CLAIM

Under section 12940, subdivision (m), an employer must provide a "reasonable accommodation for the *known* physical or mental disability of an applicant or employee." (Italics added.) An employer's duty to reasonably accommodate an employee's disability is not triggered until the employer knows of the disability. (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1252–1253 (*Avila*).)

"Generally, ' "[t]he employee bears the burden of giving the employer notice of the disability." ' " *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222.) An employer, in other words, has no affirmative duty to investigate whether an employee's illness might qualify as a disability.

24

" ' "[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." ' " (*Avila*, *supra*, 165 Cal.App.4th at pp. 1252–1253; see *Hedberg v. Indiana Bell Telephone Co.* (7th Cir. 1995) 47 F.3d 928, 934 ["ADA does not require clairvoyance"].)

"[A]n employer 'knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation.' " (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 887.)  For example, in *Faust*, the Court of Appeal held that the employer was on notice of the plaintiff's disability when a chiropractor wrote to the employer and stated that the plaintiff was " 'unable to perform regular job duties' " and recommended that the plaintiff remain off work.  (*Ibid.*)

"While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the *only* reasonable interpretation of the known facts.  'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the [FEHA].' " (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 237, italics added.)  Moreover, "[e]vidence that a decision maker learned of a plaintiff's disability *after*

25

deciding to take adverse employment action is not probative of whether the decision maker was aware of the plaintiff's disability when he or she made the decision." (*Avila, supra,* 165 Cal.App.4th at p. 1251.) In addition, " '[n]ot every illness qualifies as [a] disability.' " (*Id.* at p. 1249.) Indeed, federal courts have repeatedly rejected the contention that under the ADA "any condition requiring temporary hospitalization is disabling." (*Burch v. Coca–Cola Co.* (5th Cir. 1997) 119 F.3d 305, 317 [citing cases].)

"Put simply, unless there is some evidence an employer knows an employee is suffering from a disability, it is impossible for an employee to claim he or she was discharged because of it or that an employer refused to accommodate the disability." (*Pensinger v. Bowsmith, Inc.* (1998) 60 Cal.App.4th 709, 722, disapproved on other grounds by *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6.)

Here, when Featherstone resigned SCPMG did not know—actually or constructively—that Featherstone was suffering from a temporary disability caused by an adverse drug reaction. It is undisputed that prior to her resignation neither Featherstone's direct manager, Sheppard, nor Sheppard's supervisor/manager knew that Featherstone was suffering from an altered mental state. Nor could Featherstone's managers have reasonably suspected that she might be suffering from an altered mental state. Featherstone returned to work from her sinus-related medical leave without any restrictions. Moreover, none of

the work status reports that Featherstone submitted to SCPMG during her medical leave disclosed any information about her medical condition or prescribed medications. Featherstone's references to God during her telephone conversation with Sheppard and on Facebook were not inconsistent with Featherstone's character.

The lone, incomplete communication from Featherstone's coworker to the HR department on the day Featherstone resigned not only occurred after Featherstone had resigned, but was insufficient by itself to put SCPMG on notice. In *Miller v. National Cas. Co.* (8th Cir. 1995) 61 F.3d 627, 629–630, the Eight Circuit, in affirming summary judgment on a reasonable accommodation claim under the ADA, held that a relative's statements that the employee was " 'mentally falling apart' " and " '[s]he's really lost it' " and the family was " 'trying to get her into the hospital' " were insufficient to put an employer on notice of the employee's manic-depression.

In short, the conclusion that SCPMG was on notice of Featherstone's temporary disability at the time of the resignation is not the *only* reasonable interpretation of the known and undisputed facts. Because there is more than one reasonable interpretation and because SCPMG first learned that Featherstone suffered from the alleged temporary disability only after she had tendered her resignation and that resignation had been accepted by SCPMG—that is, after Featherstone ceased being a SCPMG

27

employee—the trial court properly granted judgment as a matter of law on Featherstone's accommodation claim.

D. SCPMG WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON FEATHERSTONE'S FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS CLAIM

Under section 12940, subdivision (n), it is separately actionable for an employer to fail "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (§ 12940, subd. (n); *Gelfo v. Lockheed Martin Corp.*, *supra*, 140 Cal.App.4th at p. 54.) "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013.)

Both the employer and the employee are responsible for participating in the interactive process. Typically, the employee must initiate the process "unless the disability and resulting limitations are obvious." (*Scotch v. Art Institute of California*, *supra*, 173 Cal.App.4th at p. 1013.) " 'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and

28

resulting limitations, and to suggest the reasonable accommodations.' " (*Ibid.*)

While employed with SCPMG, Featherstone never identified for SCPMG her temporary disability. As discussed above, Featherstone's temporary disability was not open, obvious or apparent to her supervisors/managers prior to her resignation. Moreover, Featherstone never reached out to SCPMG to request any kind of accommodation for her temporary disability before she resigned. As SCPMG was not otherwise aware that Featherstone was temporarily disabled, it was not obligated to engage in an interactive process with her. Accordingly, the trial court properly granted judgment as a matter of law on Featherstone's interactive-process claim.

E. SCPMG WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON FEATHERSTONE'S WRONGFUL TERMINATION CLAIM

Featherstone's fifth and final claim is pleaded as a common law claim for wrongful termination in violation of FEHA.[10] Specifically, Feather alleges that she was wrongfully terminated under FEHA because of her temporary disability and her right to take medical leave.

Under California law, if an employer did not violate FEHA, the employee's claim for wrongful termination in violation of public policy necessarily fails. (*Esberg v. Union*

_____

[10] In her operative complaint, Featherstone alleged that this claim was also based on a violation of the California Constitution. During discovery, however, she clarified that it was limited to a violation of FEHA only.

29

*Oil Co.* (2002) 28 Cal.4th 262, 272–273, superseded by statute on another point as stated in *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 396–397.)

As Featherstone has not established a violation of FEHA and because FEHA does not confer on employees or applicants the right to take a medical leave, SCPMG is also entitled to judgment as a matter of law on Featherstone's claim for wrongful termination in violation of public policy.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.