Filed 11/30/22  Forrester v. Airborne Systems North America CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HUMPHREY V. FORRESTER, | |
| Plaintiff and Appellant, | G060465 |
| v. | (Super. Ct. No. 30-2018-01006085) |
| AIRBORNE SYSTEMS NORTH AMERICA OF CA, INC. et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter and Stephanie George, Judges; Richard Oberholzer, Judge (retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Humphrey V. Forrester, in pro. per, for Plaintiff and Appellant.

Baker & Hostetler, Sabrina L. Shadi and Amy E. Beverlin for Defendants and Respondents.

Plaintiff Humphrey V. Forrester's employment by defendant Airborne Systems North America of CA, Inc. (Airborne) was terminated after a coworker complained about Forrester's inappropriate conduct toward her. Forrester filed a lawsuit for, inter alia, wrongful employment termination and violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et al.) against Airborne and Airborne's human resources manager Millie Nystul.[1]

Judgment was entered in favor of the Airborne parties after the trial court (1) sustained their demurrer brought under Code of Civil Procedure section 430.10, subdivision (e),[2] without leave to amend, as to Forrester's claims for harassment and intentional infliction of emotional distress contained in his third amended complaint; and (2) granted Airborne's motion for summary judgment as to Forrester's remaining claims for disability discrimination, retaliation, and wrongful termination in violation of public policy.

Forrester challenges many rulings issued by the trial court throughout the litigation process. For the reasons we explain *post*, we reject each of Forrester's contentions of error and affirm.

FACTS AND PROCEDURAL HISTORY

In July 2017, Forrester exhausted his administrative remedies by filing a complaint with the Department of Fair Employment and Housing (DFEH) alleging Airborne terminated his employment because of his age (then 55 years old) and because of his mental disability "due to the enormous stress from the hostile work environment." He further alleged in his July 2017 DFEH complaint: "During the time I was employed by Defendant, I received excellent performance evaluation reviews and I maintained a

---

[1] We refer to Airborne and Nystul collectively as the "Airborne parties."

[2] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

2

great wor[k] record. After being terminated, the person that replaced my position was younger and with significantly less experience."

A year later, in July 2018, Forrester initiated the instant action by filing a complaint against the Airborne parties and individual defendants Eric Blissmer and Randy Copenhaver which contained claims for wrongful termination in violation of public policy, defamation, harassment, retaliation, disability discrimination, race discrimination, age discrimination, marital status discrimination, and intentional infliction of emotional distress. In September 2018, the defendants to the original complaint filed a demurrer and a motion to strike.

After the trial court sustained the demurrer with leave to amend, Forrester filed a first amended complaint in November 2018 against the Airborne parties and Copenhaver. After the court sustained the demurrer to the first amended complaint with leave to amend, in March 2019, Forrester filed a second amended complaint against only the Airborne parties.

After the Airborne parties filed a demurrer to the second amended complaint, in May 2019, Forrester filed a new DFEH complaint. The court sustained the demurrer to the second amended complaint and granted Forrester leave to amend all claims except for his marital status discrimination claim for which the court did not grant leave to amend.

In August 2019, Forrester filed the operative third amended complaint in which he solely named the Airborne parties as defendants; Blissmer and Copenhaver were not included as defendants. The third amended complaint contained claims entitled wrongful termination in violation of public policy, "harassment," disability discrimination, retaliation based on his disability and related discrimination, and intentional infliction of emotional distress. The Airborne parties filed a demurrer challenging each cause of action in the third amended complaint on the ground none

3

stated facts sufficient to constitute a cause of action within the meaning of section 430.10, subdivision (e). Forrester did not file an opposition to the demurrer.

In November 2019, the trial court sustained the demurrer, without leave to amend, as to the harassment and intentional infliction of emotional distress causes of action. The court overruled the demurrer as to the remaining three claims.[3]

A year later, in December 2020, Airborne filed a motion for summary judgment, or in the alternative, for summary adjudication (motion for summary judgment). In the motion for summary judgment, Airborne argued, inter alia, the undisputed material facts showed Airborne terminated Forrester's employment due to inappropriate conduct toward a 19-year-old intern in violation of company policy and no evidence showed Airborne's reason for terminating his employment was false or pretextual.

The trial court granted the motion for summary judgment. The court found that Airborne produced evidence showing, inter alia, the decision to terminate Forrester's employment was based on what intern "Carissa Gramm reported regarding Mr. Forrester's inappropriate conduct toward her" and thus was made for a legitimate, nondiscriminatory reason. The burden then shifted to Forrester "to create a triable issue of material fact," but he failed to meet his burden because he did not present any evidence.

Judgment was entered against Forrester. Forrester timely appealed.

---

[3] Following the rulings on the demurrers, Nystul, Copenhaver, and Blissmer were dismissed from the lawsuit.

4

I.

THE AIRBORNE PARTIES' DEMURRER TO THE THIRD AMENDED COMPLAINT

Forrester argues the trial court erred by sustaining the Airborne parties' demurrer as to his harassment and intentional infliction of emotional distress claims. We first address the Airborne parties' argument in the respondent's brief that this court need not consider Forrester's challenge to the trial court's ruling on the demurrer (or to any of the other rulings identified in his opening brief aside from those involving the order granting summary judgment) because they are "not necessary to the Court's appellate decision." We disagree. Forrester's notice of appeal "encompasses all nonappealable orders made before entry of judgment." (*Wassman v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 852 (*Wassman*), citing § 906.) We therefore consider Forrester's challenge to the order sustaining the demurrer to the third amended complaint without leave to amend with regard to the harassment and intentional infliction of emotional distress claims, and his challenges to the other nonappealable orders made before entry of judgment. For the reasons we explain, the trial court did not err by sustaining the demurrer without leave to amend.

A. Governing Legal Principles and Standard of Review

"The rules by which the sufficiency of a complaint is tested against a general demurrer are well settled. ""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility

that the defect can be cured by amendment . . . .'" [Citation.] "'The burden of proving such reasonable possibility is squarely on the plaintiff.'" [Citation.] Our examination of the complaint is de novo. [Citation.]" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) "'We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]' [Citation.]" (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

B.  Harassment Claim

Although Forrester, over the course of the litigation, had the opportunity to amend his pleading three times, the third amended complaint is not the clearest as to the basis for Forrester's harassment claim. His claim appears to be based on allegations he suffered harassment based on his race by human resources manager Nystul, who he alleges was "the offending harasser herself."

In the third amended complaint, Forrester alleged Nystul harassed him by unfairly subjecting him to an hour-long interrogation on September 9, 2016 regarding what had happened during his dinner with coworker Gramm two days earlier and Gramm's complaint about Forrester's inappropriate conduct toward her. The third amended complaint further alleged that a short time after the interrogation, Forrester's employment was terminated.

FEHA, at Government Code section 12940, subdivision (j)(1), prohibits harassment based on, inter alia, race. In order to establish a prima facie case for harassment under FEHA, a plaintiff must show:  (1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment complained of was based on the plaintiff's protected status; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the defendant is liable for

6

the harassment. (*Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 581; *Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876.)

Harassment includes verbal harassment ("e.g., epithets, derogatory comments or slurs on a basis enumerated in [FEHA]"), physical harassment ("e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in [FEHA]"), and visual forms of harassment ("e.g., derogatory posters, cartoons, or drawings on a basis enumerated in [FEHA]"). (Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(A)-(C).) Such "harassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706, italics omitted.) ""'"[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. . . . [¶] . . . [¶] . . . [C]ommonly necessary personnel management actions . . . do not come within the meaning of harassment. . . . These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. . . . This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA."'"" (*Id.* at p. 707.)

Forrester's harassment claim is based on allegations of Nystul's conduct, as human resources manager, of investigating Gramm's allegations Forrester had engaged in inappropriate conduct when they had dinner a couple days earlier. The third amended complaint does not allege facts showing Nystul engaged in any form of racial harassment (verbal, physical, or visual), she otherwise demonstrated any racial animus, or her conduct of interrogating Forrester had anything to do with his race.

7

In the third amended complaint, Forrester alleges: "There were several deplorable harassing events at Airborne that were racially motivated, in which Plaintiff had met with Nystul to make complaints about them, but Nystul did not conduct any investigation. For the purposes of showing a pattern of various harassment by Airborne against Plaintiff, refer to EXHIBIT C." Attached to the third amended complaint as an exhibit is a document entitled "flowchart of plaintiff's tenure at Airborne Systems" (some capitalization omitted) which contains descriptions of episodes of several nonparty coworkers' conduct and statements, including one coworker's references to "'KKK'" that occurred in 2014 and 2015. That exhibit asserts that, in February 2016, Nystul did not investigate Forrester's complaints of harassment.

Although the attached exhibit contains allegations of racial harassment by coworkers who are not parties to this lawsuit, Forrester does not allege in the third amended complaint (and did not allege in either of his DFEH complaints) that his current harassment claim is based on the conduct of anyone other than Nystul.[4] Although Forrester amended his DFEH charge in May 2019 to allege he had been harassed because of his "race, national origin (includes language restrictions), color, disability (physical or mental), medical condition (cancer or genetic characteristic), age (40 or over), marital status," the third amended complaint does not allege facts supporting a harassment claim based on race against the Airborne parties because of Nystul's conduct. Allegations that Nystul questioned Forrester as part of her investigation of Gramm's complaint about Forrester's conduct is insufficient to state a claim for harassment based on race as a matter of law. (*Roby v. McKesson Corp., supra*, 47 Cal.4th at p. 707; see *Reno v. Baird* (1998) 18 Cal.4th 640, 645-646 [ordinary personnel decisions cannot give rise to a

---

[4] This is likely because a FEHA harassment claim based on conduct that occurred in 2014 and 2015 would be time barred because Forrester did not file his original DFEH complaint until 2017. An employee alleging a FEHA violation must file a charge with the DFEH within one year of the alleged adverse act. (See Gov. Code §§ 12960, 12965, subd. (b).)

harassment claim because "'harassment consists of a type of conduct not necessary for performance of a supervisory job'"].)

In the opening brief, Forrester also argues the trial court erred by sustaining the demurrer as to his claim of harassment without giving a reason. Section 472, subdivision (d) provides in part: "Whenever a demurrer in any action or proceeding is sustained, the court shall include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based."

A party, however, waives a statement of the grounds upon which a demurrer is sustained if the party does not request one. (§ 472, subd. (d); *Krawitz v. Rusch* (1989) 209 Cal.App.3d 957, 962.) Here, Forrester does not contend, and the record does not show, that he requested a statement of grounds. He therefore waived the trial court's specification of grounds. In any event, the Airborne parties' demurrer to the harassment and intentional infliction of emotional distress claims was made on only one ground—that each claim failed to state facts sufficient to constitute a cause of action within the meaning of section 430.10, subdivision (e). No more detailed reasoning other than failure to state a cause of action is required. (*Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 275.)

C. Intentional Infliction of Emotional Distress Claim

Forrester contends the trial court erred by sustaining the demurrer as to his claim for intentional infliction of emotional distress (IIED). To state an IIED claim, the plaintiff must allege facts showing: "'"(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."'" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.)

9

A claim for IIED must be brought within two years. (§ 335.1.) "The statute of limitations on common law claims is not tolled while DFEH charges are pending because the aggrieved employee can simultaneously pursue statutory and common law remedies. [Citation.] An aggrieved employee may proceed directly to court on common law claims without receiving a right-to-sue notice from the DFEH. [Citation.]" (*Wassman, supra*, 24 Cal.App.5th at p. 853.)

"'Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.]" (*Christensen v. Superior Court, supra*, 54 Cal.3d at p. 903.) "[M]ere insulting language, without more, ordinarily would not constitute extreme outrage" unless it is combined with "aggravated circumstances." (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 499.)

Here, Forrester alleges only one event in support of his claim that occurred within the two years before he filed this lawsuit in July 2018—Nystul's investigation of Gramm's complaint, including her interrogation of Forrester. In the third amended complaint, Forrester clarifies what his claim is not based on: "What was severely extreme and outrageous conduct by defendants Airborne and Nystul was *not* the manner in which Nystul spoke during the interrogation, *not* her tone of voice, *not* any racial overtones that [Forrester] believed may have occurred, *not* how loudly she spoke, *not* of any criticisms that Nystul said (such as 'Why did you buy Gramm's dinner?') What was obviously severely extreme and outrageous conduct that exceeded all possible bounds of decency in a civilized society were not just the breaking down process as described above, but also defendants' utilizing their knowledge of [Forrester]'s mental condition and in the most despicable way of taking advantage of it to try and push him to the limit. Defendants' highly unprofessional behavior was notoriously appalling, to say the least." (Italics added.) Again, notwithstanding multiple opportunities to amend, Forrester has

10

failed to allege the acts or statements by Nystul that he contends constitute outrageous and extreme conduct, regardless of Nystul's knowledge of the state of his mental health.[5]

Although the third amended complaint concludes that Nystul's hour-long interrogation was "aggressive" and "invasive," it does not allege *facts* of outrageous conduct to state a claim for IIED as a matter of law.


D. Leave to Amend

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

"Absent an effective request for leave to amend the complaint in specified ways, an abuse of discretion can be found "'only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case." [Citation.]' [Citation.]" (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507, overruled on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.)

---

[5]   Although no longer a named defendant in the third amended complaint, Forrester also alleged in the third amended complaint that Copenhaver's silence during Nystul's interrogation of Forrester was "extreme and outrageous."  The third amended complaint alleged:  "How can the head of a department sit silently and watch one of his employees being 'beaten up' by [someone] else without saying something, even when the employee is directly soliciting his help from only 4 feet away?  That type of bystander behavior, to a reasonable person, would be considered premeditated and a contributor to the employee being continued to be beaten; similar to adding more fuel to existing fire."  However, Copenhaver's silent presence at the meeting does not constitute extreme and outrageous conduct to support a claim for intentional infliction of emotional distress either.

11

When the trial court sustained the second amended complaint with leave to amend, it warned Forrester "this may be his last opportunity to attempt to plead a cause of action. Any Third Amended Complaint should, therefore, be pled with particularity and attention to the elements of each cause of action."

Forrester did not argue in the trial court, and has not argued on appeal, much less demonstrated in either court, that there is a reasonable possibility the defects in the pleading of his harassment and intentional infliction of emotional distress claims in the third amended complaint can be cured by amendment. We therefore conclude the demurrer to those claims was properly sustained without leave to amend.

## II.

### FORRESTER HAS FORFEITED THE ARGUMENT THE TRIAL COURT ERRED BY STRIKING A TEXT MESSAGE ALLEGATION FROM THE SECOND AMENDED COMPLAINT

Forrester argues in the opening brief the trial court "erred in having plaintiff strike from his complaint a text message that defendant construed as attorney-[client] privilege but several months later allowed defendant to re-introduce the text message in the case." (Capitalization omitted.) The remainder of Forrester's argument on this point consists of the following: "Plaintiff deleted the 3-part text message that Defendant had introduced 2 years earlier in their response (in April 2017 but no case was filed yet) to Plaintiff's then-lawyer's demand letter to Defendant. (TAC [third amended complaint] p.2:14-15, Exh. A-2) [From October 2016 to July 2017, Plaintiff had retained an attorney Maya Serkova from Serendib Law Firm in Orange, CA. However, Ms. Serkova dropped the case 10 months later after Plaintiff rejected a paltry offer that was only sufficient to meet Ms. Serkova's costs and fees up to that point.] Fast forward 17 months when Defendant finally decided to use the pretextual reason of terminating Plaintiff Forrester: 'harassment and interfering with an investigation'. [¶] For [the trial court] to permit Defendant to re-introduce a document after the judge told Plaintiff to remove it from his complaint was not proper judicial discretion and obviously prejudicial against Plaintiff."

12

Lines 14 to 15 of page 2 of the third amended complaint cited by Forrester allege that the trial court ordered Forrester to have his right to sue letter amended within 45 days to reflect his current causes of action and to then file the amended right to sue letter with the court and forward a copy to the Airborne parties.  Exhibit A to the third amended complaint consists of a minute order (1) sustaining the demurrer to the second amended complaint with leave to amend, affording Forrester "one further opportunity to add the amended Right-to-Sue letter as part of a Third Amended Complaint, and to address the other issues raised by the defendants in their demurrer;"[6] and (2) granting the Airborne parties' motion to strike portions of the second amended complaint alleging a claim for punitive damages and "relating information from a settlement conference."

Neither citation addresses any text message from Forrester's former counsel, nor otherwise sheds any light on the argument Forrester is purporting to assert.  Forrester does not discuss this argument in his reply brief.

"'"The reviewing court is not required to make an independent, unassisted study of the record in search of error . . . ."  [Citations.]  It is the duty of [appellant] to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal.  [Citation.]  If no citation "is furnished on a particular point, the court may treat it as waived."'  [Citation.]"  (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 862; citing *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685 ["An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority"].)

---

[6]  The minute order states in part:  "The portions stricken are those identified at 2:1-4 of the Notice of Motion" to strike the second amended complaint.  That reference does not shed light on Forrester's argument because our record does not contain the moving papers or the opposition.

Forrester has failed to adequately articulate his argument and support it with citations to the record and relevant legal authority.  We therefore do not consider it further.

### III.

### THE CASE MANAGEMENT CONFERENCE

Forrester argues the trial court erred "in vacating" the case management conference set for December 26, 2019 "which precluded [Forrester] from addressing [Airborne]'s several irrefutable inconsistencies and underhanded discoveries." (Capitalization omitted.)  Forrester argues he was prejudiced in "not being able to testify at the CMC hearing about some underhanded schemes and elaborate fabrications that [Airborne] had done to try and entrap [Forrester]."

Rule 3.722(a) of the California Rules of Court provides:  "In each case, the court must set an initial case management conference to review the case.  At the conference, the court must review the case comprehensively and decide whether to assign the case to an alternative dispute resolution process, whether to set the case for trial, and whether to take action regarding any of the other matters identified in rules 3.727 and 3.728.  The initial case management conference should generally be the first case management event conducted by court order in each case, except for orders to show cause."  Rule 3.725 of the California Rules of Court requires each party to file a case management statement, using the mandatory Case Management Statement (Judicial Council form CM-110) and serve it on all other parties in the case.

Forrester filed a case management statement to which he attached 41 pages of contentions, argument, evidence, and portions of discovery responses in advance of the scheduled December 26, 2019 case management conference.  The Airborne parties also filed a case management statement.

Rule 3.722(d) of the California Rules of Court states:  "If, based on its review of the written submissions of the parties and such other information as is

14

available, the court determines that appearances at the conference are not necessary, the court may issue a case management order and notify the parties that no appearance is required."

The trial court here did just that. In a minute order dated December 19, 2019, the trial court stated: "There are no appearances by any party. [¶] Pursuant to Rule 3.722 of the California Rules of Court, and after a review of the written submissions of the parties and the court's file, the Court determines that appearances at the Case Management Conference are not necessary and the Court issues the following order: [¶] The matter is set [for] a Jury Trial on 10/26/2020 at 9:00 AM in Department C22. [¶] The estimated length of trial: 5 days. [¶] The court declines to set a Mandatory Settlement Conference at this time. [¶] Defendants shall give notice." Our record does not show Forrester made a request to appear at the case management conference and he does not cite legal authority showing that even if he had made such a request, he would have been entitled to so appear.

In his opening brief, Forrester cites rules 369 and 371 of the Orange County Superior Court Local Rules and argues the trial court erred in vacating the case management hearing "because it prejudiced Plaintiff in not being able to testify at the CMC hearing . . . [and] [s]ince there was no CMC, and eventually no trial was conducted due to the summary judgment, it may have deprived Plaintiff from bringing up crucial evidence in this briefing."

But Forrester was not entitled to present testimony or otherwise argue the merit of his case at the case management conference. Rule 3.727 of the California Rules of Court identifies the proper subjects of such a conference, which include issues involving the state of the pleadings and status of service of process, alternative dispute

15

resolution options, discovery plans, insurance, the nature of relief sought, and trial procedures.[7]

Rules 369 and 371 of the Orange County Superior Court Local Rules do not provide otherwise. Local rule 369 reiterates rule 3.725 of the California Rules of Court's requirement that each party must file a case management statement, and expands on the consequences for a party who fails to comply with that rule. Local rule 371 states: "At the case management conference, the court will consider the present status of the case and how to achieve compliance with the Time Standards as adopted by the Judicial Council of the State of California." Neither local rule limits the trial court's authority pursuant to rule 3.722(d) of the California Rules of Court to determine that appearances at the conference are not necessary. Nor could a local rule so conflict with a rule of court. (See *In re Harley C.* (2019) 37 Cal.App.5th 494, 501 [Gov. Code, § 68070, subdivision (a) provides that "courts may institute only those local rules that are 'not inconsistent with law or the rules adopted and prescribed by the Judicial Council'"].)

In any event, Forrester does not identify any information he wanted to present to the court that he did not include in his lengthy attachments to his case management conference statement. We find no error.

IV.

DISCOVERY ISSUES

Forrester also argues the trial court erred in its handling of certain discovery issues. "Orders regarding discovery are reviewed under the abuse of discretion standard. [Citations.]" (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*).) The test for abuse of discretion is whether the

---

[7] Rule 3.728 of the California Rules of Court, in turn, requires that the case management conference be conducted in the manner provided by local rule and requires the court to enter a case management order setting a schedule for subsequent proceedings and otherwise providing for the management of the case.

16

trial court's decision exceeded the bounds of reason. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.) "In applying the abuse of discretion standard, the reviewing court measures the evidence presented to the trial court against the range of options permitted by the established legal criteria. [Citation.]" (*Cornerstone, supra*, 56 Cal.App.5th at p. 789.) The governing law limits the scope of the trial court's discretion, and a decision that exceeds those limits constitutes an abuse of discretion. (*Ibid.*)

A. Motion to Quash

Forrester first challenges the trial court's order granting the Airborne parties' motion, brought pursuant to sections 1985.3 and 1987.1, to quash the subpoena duces tecum issued by Forrester on PTS Advance employment agency for documentation regarding Gramm. Section 1985.3, subdivision (b) requires a subpoenaing party to serve on the consumer whose records are being sought a copy of the subpoena duces tecum and related documents at least five days before serving the subpoena on the custodian from whom the records are sought. Subdivision (k) of section 1985.3 provides: "Failure to comply with this section shall be sufficient basis for the witness to refuse to produce the personal records sought by a subpoena duces tecum." Section 1987.1 authorizes a party to file a motion to quash a subpoena.

In his opposition to the motion to quash, Forrester admitted he did not serve Gramm as required by section 1985.3 because he was unaware of that code section's consumer notice requirement. Forrester argued the trial court should waive the notice requirement or issue an order shortening time for service of the subpoena under subdivision (h) of section 1985.3 which provides: "Upon good cause shown and provided that the rights of witnesses and consumers are preserved, a subpoenaing party shall be entitled to obtain an order shortening the time for service of a subpoena duces tecum or waiving the requirements of subdivision (b) where due diligence by the subpoenaing party has been shown."

17

At the hearing on the motion, the trial court denied Forrester's request: "I'm not going to waive notice. I don't see any reason to do so, especially in this particular case. So I'm not going to waive notice. [¶] Basically, what I'm going to say to you is that the motion to quash will be granted, but it's without prejudice in the sense that you can always come back and follow the code and make the same request."

Forrester did not re-serve the subpoena duces tecum. He has not and cannot show he acted with due diligence in attempting to serve Gramm in compliance with section 1985.3's notice to consumer requirement because he admittedly did not know of that requirement and had not attempted to comply with it as of the date the trial court granted the motion to quash. Without a showing of good cause and due diligence, there was no basis for the trial court to waive the notice requirements of section 1985.3 or issue an order shortening time for service of the subpoena.

Even if the trial court had erred by denying Forrester's request to waive notice or for an order shortening time, Forrester has not shown how he was prejudiced by the court's ruling. The court granted the motion to quash in October 2019 (two months before the scheduled case management conference when a trial date was set in the case). The trial court explained to Forrester at the hearing on the motion that the order granting the motion to quash was without prejudice so as to allow Forrester to again seek to subpoena Gramm's records from PTS by following the statutory requirements. Nothing in our record shows Forrester was prevented from availing himself of that opportunity.

B. The Motion to Compel Discovery and the Motion for Reconsideration

Forrester filed a motion to compel further responses to the request for production of documents "set five" that he had propounded on Airborne. Airborne filed an opposition to the motion, arguing, inter alia, that Forrester's requests were "significantly overbroad," his motion was untimely, and his motion was not supported with the required separate statement.

18

Forrester did not appear at the hearing on the motion. The trial court denied the motion because (1) it was untimely; (2) Forrester failed to file a separate statement as required by rule 3.1345(a) of the California Rules of Court; and (3) it was improper because Forrester had previously served four requests for production of documents that were identical to the "set five" at issue in the motion. The trial court issued sanctions in the amount of $700 to be paid by Forrester to Airborne's counsel pursuant to section 2031.310, subdivision (h).

Forrester filed a motion seeking reconsideration of the court's ruling under section 1008, subdivision (a) on the ground: "Plaintiff has determined that the court did not address Plaintiff's 22-page Reply to Defendant's Opposition to Plaintiff's Motion to Compel . . . that had been timely filed . . . . The court order only referred to Defendants' Opposition to Plaintiff's Motion to Compel . . . in which the REPLY refutes with different facts."

The trial court granted Forrester's motion to reconsider its ruling on the motion to compel, but stated in its minute order: "On reconsideration and *re-reviewing* Plaintiff's reply, the Court's ruling remains the same. [¶] Plaintiff's Motion to Compel Further Responses to Requests for Production of Documents ('RPDS'), Set Five is DENIED." (Italics added.) The trial court explained:

"A motion to compel further response must be served within 45 days after service of a verified response (extended if served by mail, overnight delivery or fax or electronically; see CCP §§ 1010.6(a)(4), 1013.).

"Otherwise, the demanding party waives the right to compel any further response to the CCP § 2031.010 demand. (CCP §§ 2031.310(c), 2016.050; see *Sperber v. Robinson* (1994) 26 CA4th 736, 745.)

"Plaintiff filed his motion on 6/17/2020 (the last day to file) and then failed to inquire about it for three weeks. It is the filer's responsibility to verify receipt and filing of the document. Absent a confirmation of receipt and filing from the court, there

19

is no presumption that an electronically filed document has been received and filed.  (See CRC 2.259(a)(3), (4))

"Additionally, Plaintiff failed to file a separate statement as required by CRC 3.1345(a)(3).  Plaintiff made no request to file a concise outline of the discovery request either prior to or in his actual motion and none was granted.

"The motion remains improper.  Plaintiff served identical RPDS in sets 1, 2, 3, and 4.  [Citation.]  Plaintiff's argument that he continues to propound identical RPDS because Defendants keep failing to comply is not persuasive.

"If Defendants fail to comply with a request to provide documents, Plaintiff's recourse is to bring a timely motion to compel further responses or a motion to produce documents.  The solution is not to keep propounding the same RPDS and expect a different response.

"Finally, if Plaintiff did not believe the Court considered his reply in providing its tentative decision, Plaintiff should have appeared at Court Call to argue the merits of the reply.  Plaintiff failed to do so.

"Sanctions in the amount of $700 to be paid by Plaintiff to counsel for Defendant within 60 days.  CCP §§2031.310(h)."

In his opening brief, Forrester does not challenge the denial of his motion to compel on the ground it was untimely brought.  As the trial court did not err by denying the motion on that ground, we could end our analysis of this issue here.

We nevertheless address and reject Forrester's argument the trial court erroneously denied the motion on the additional ground he failed to file a separate statement as required by rule 3.1345(a) of the California Rules of Court.  Forrester argues that in the reply he filed in support of his motion to compel he "had pled with the court to 'grant [him] the opportunity to submit a concise outline . . .' in lieu of a separate statement, permitted by Rule 3.1345[(b)(2)]."  That rule, however, provides that a separate statement is not required "[w]hen a court *has allowed* the moving party to

20

submit—in place of a separate statement—a concise outline of the discovery request and each response in dispute." (Italics added.)

As pointed out by the trial court, Forrester "made no request to file a concise outline of the discovery request *either prior to or in his actual motion* and none was granted." (Italics added.) Forrester does not claim the court ever granted him permission to submit a concise outline of the disputed discovery requests and responses instead of a separate statement. His request of the court to do so for the first time in his reply filed in support of his motion to compel does not constitute permission; in any event, his reply is not included in our appellate record.

Contrary to Forrester's contention, the record shows the trial court reviewed and considered Forrester's submissions in support of his motion to compel, and then reviewed them again after granting his motion for reconsideration. Forrester's motion to compel was properly denied.


C. Stipulation and Protective Order

Forrester argues the trial court signed a stipulated protective order on December 13, 2019 "compelling Defendant to permit Plaintiff to legally inspect documents from Plaintiff's employer, Airborne." Without citing to the record, Forrester argues the trial court erred by "ignor[ing]" the stipulated protective order, which he states he included in the amended notice of his unsuccessful motion to compel, because the stipulated protective order in and of itself required Airborne to allow him to inspect Airborne's nonconfidential information including e-mails.

Forrester's argument is without merit. The parties' stipulation and protective order states the parties entered into the stipulation "in order to facilitate the exchange of information and documents which may be subject to confidentiality limitations on disclosure due to federal laws, state laws, and privacy rights." The stipulation and protective order set forth the *manner* in which exchanged discovery

21

should be segregated and marked for confidentiality purposes. It did not require the Airborne parties to produce any documents and it did not vest in Forrester any rights to inspect any particular materials.

V.

ISSUES REGARDING SUMMARY JUDGMENT

The trial court granted Airborne's motion for summary judgment as to all of Forrester's remaining claims for disability discrimination, retaliation, and wrongful termination in violation of public policy. As we will discuss, the record shows the trial court applied the correct analytical framework and legal standards in granting the motion and Forrester's claims of procedural and evidentiary error are without merit.

A.  Standard of Review and the Burden-shifting Standard Applicable to FEHA Claims

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.] A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action. [Citation.]" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

In *Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 820-821 (*Wilkin*), a panel of this court summarized the burden-shifting standard applicable to discrimination claims brought under FEHA as follows:

22

"'California uses the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination based on a theory of disparate treatment. (*Guz* [*v. Betchel National, Inc.* (2000)] 24 Cal.4th 317, 354 [*Guz*]; see *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*).) "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." [Citation.]

"'Under the *McDonnell Douglas* test, the plaintiff has the initial burden of establishing a prima facie case of discrimination. [Citation.] To meet this burden, the plaintiff must, at a minimum, show the employer took actions from which, if unexplained, it can be inferred that it is more likely than not that such actions were based on a prohibited discriminatory criterion. [Citation.] A prima facie case generally means the plaintiff must provide evidence that (1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held, (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests a discriminatory motive. [Citation.]

"'If the plaintiff establishes a prima facie case, then a presumption of discrimination arises, and the burden shifts to the employer to rebut the presumption by producing admissible evidence sufficient to raise a genuine issue of material fact the employer took its actions for a legitimate, nondiscriminatory reason. [Citation.] If the employer meets that burden, the presumption of discrimination disappears, and the plaintiff must challenge the employer's proffered reasons as pretexts for discrimination or offer other evidence of a discriminatory motive.' [Citation.]

23

"In *Scotch* [*v. Art Institute of California* (2009)] 173 Cal.App.4th [986,] at pages 1004-1005, a panel of this court addressed the application of the *McDonnell Douglas* test in the context of a motion for summary judgment: 'As *Guz* explains, several decisions suggest that when an employee opposes an employer's motion for summary judgment of a discrimination claim, the employer must make the initial showing of no merit and the *McDonnell Douglas* burdens are reversed. [Citation.] Other decisions suggest the plaintiff can survive the employer's summary judgment motion merely by presenting, at the outset, evidence satisfying the prima facie elements of *McDonnell Douglas*. [Citation.] *Guz* did not resolve the issue because the defendant in that case proceeded to the second step of the *McDonnell Douglas* test and produced admissible evidence sufficient to raise a genuine issue of material fact that its actions were taken for a legitimate, nondiscriminatory reason. [Citation.]

"'In *Kelly* [*v. Stamps.com Inc.* (2005)] 135 Cal.App.4th 1088, the court explained the *Guz* standard in light of the California Supreme Court's decision in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826: "A defendant employer's motion for summary judgment slightly modifies the order of these [*McDonnell Douglas*] showings. *If, as here, the motion for summary judgment relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination.* [Citations.] *To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred.* [Citations.] In determining whether these burdens were met, we must view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing [the plaintiff's] evidence while strictly scrutinizing defendant's."' (*Wilkin, supra*, at pp. 820-821, italics added.) In *Scotch, supra*, 173 Cal.App.4th at page 1005, the appellate court "agreed with and applied the standard set

24

forth in *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, in affirming summary judgment in favor of an employer as to a disability discrimination claim alleged under FEHA." (*Wilkin, supra*, at p. 822.)

In the context of a motion for summary judgment, a retaliation claim brought under FEHA[8] "is treated the same as a FEHA discrimination claim: Where ""'the employer presents admissible evidence either that one or more of [the employee's] prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory [or nonretaliatory] factors, the employer will be entitled to summary judgment unless the [employee] produces admissible evidence which raises a triable issue of fact material to the [employer's] showing.'"" [Citation.]" (*Wilkin, supra*, 71 Cal.App.5th at p. 828.)

B. The Trial Court's Order Granting Airborne's Motion for Summary Judgment

The trial court explained its reasoning for granting Airborne's motion for summary judgment as follows:

"When the employer seeks summary judgment, as here, the initial burden rests with the employer to show that no unlawful discrimination occurred. Basically, the Defendant must carry the burden of showing the employee's action has no merit [citation]. It may do so by evidence that either negates an essential element of the employee's claim (difficult to do, because [a] prima facie case of discrimination is so easy to establish) or evidence that demonstrates some legitimate, nondiscriminatory reason for the action taken against the employee. [Citation.] Here, the Defendant proffered evidence that not only negates elements of each cause of action, but also shows that the decision to terminate Plaintiff was for a legitimate, nondiscriminatory reason;

---

[8] Forrester's retaliation claim in the third amended complaint was based on allegations Airborne violated FEHA because "disability discrimination" was the substantial motivating reason for Airborne's decision to terminate his employment.

that is, Airborne terminated Mr. Forrester's employment based on what Carissa Gramm reported regarding Mr. Forrester's inappropriate conduct toward her. The evidence in support of this argument is: Nystul Decl., ¶¶ 6-12; Persoff Decl., ¶ 3, Exh. J, 88:20- 89:8; ¶ 5, Exh. L, p. 4. Ms. Nystul determined that Plaintiff's conduct violated Airborne's anti-harassment policy. (UMF 8.) This constituted a legitimate business reason that compelled terminating Plaintiff[']s employment. [Citation.]

"The burden now shifted to Plaintiff to create a triable issue of material fact as to Defendant's attempt to negate the elements of the cause of action. Since the Motion is unopposed, the Plaintiff has failed to sustain his burden."


C. Forrester's Contentions of Error Regarding the Grant of Summary Judgment Are Without Merit

Forrester does not argue the trial court erred in granting summary judgment by applying incorrect legal standards or an improper analysis. Instead, Forrester argues the court's grant of summary judgment was in error, due to certain procedural and evidentiary errors which we address *post*. The trial court's minute order and signed order show the trial court applied the governing burden-shifting standard in reaching its decision.

Pursuant to the *McDonnell Douglas* burden-shifting framework, as applied by the California Supreme Court in *Guz, supra*, 24 Cal.4th 317 in the context of a motion for summary judgment, Airborne produced evidence showing Forrester's employment was terminated based on Nystul's recommendation following her investigation of Gramm's complaint about Forrester's conduct. That evidence, in the form of Nystul's declaration filed in support of the motion for summary judgment, showed that on September 8, 2016, Gramm complained to Nystul that the prior evening, Forrester made several inappropriate comments of a sexual nature to her, told her to keep in touch after

26

she returned to school or "he would have to find her," and tried to "'make out'" with Gramm when she hugged him goodbye.

In her declaration, Nystul stated that her recommendation to terminate Forrester's employment was also based on her conversation with Forrester on September 9, 2016, and his failure thereafter to comply with Nystul's request not to contact Gramm. She further stated in her declaration that she had concluded Forrester violated Airborne's anti-harassment policy.

Additionally, Airborne produced evidence that Forrester's employment with Airborne was at will. In her declaration, Nystul authenticated Forrester's signed "Acknowledgment of At-Will" form which stated, inter alia, that "[a]ll employees of Airborne Systems [U.S.] are employed 'at-will,' meaning that the terms of employment may be changed with or without notice, with or without cause, including, but not limited to termination." That form further stated: "Airborne Systems U.S. or the employees may terminate the employment relationship at any time, with or without notice, with or without cause."

Citing, inter alia, Nystul's declaration, the trial court correctly concluded Airborne had presented evidence that Forrester's employment was terminated for a legitimate, nondiscriminatory reason. "A legitimate, nondiscriminatory reason is one that is unrelated to prohibited bias and that, if true, would preclude a finding of discrimination. [Citation.] [An] employer's evidence must be sufficient to allow the trier of fact to conclude that is it more likely than not that one or more legitimate, nondiscriminatory reasons were the sole basis for the adverse employment action. [Citation.]" (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158 (*Featherstone*), citing, inter alia, *Guz, supra*, 24 Cal.4th at p. 358.)

As noted by the trial court, after Airborne presented such evidence, the burden shifted to Forrester to present evidence that Airborne's decision was motivated at

least in part by prohibited discrimination or retaliation.  (*Featherstone, supra*, 10 Cal.App.5th at pp. 1158-1159, citing *Guz, supra*, 24 Cal.4th at pp. 353, 357.)  To carry that burden, Forrester's evidence would need to have been "sufficient to support a reasonable inference that discrimination was a substantial motivating factor in the decision."  (*Featherstone, supra*, at p. 1159.)

Here, Forrester did not file any opposition to the motion for summary judgment and did not submit any evidence showing that discrimination or retaliation was a substantial motivating factor in the decision to terminate his employment.  In his appellate briefs, Forrester asserts he did not violate Airborne's anti-harassment policy. He also points out that Gramm was no longer working for Airborne at the time of the dinner.

Notwithstanding Forrester's failure to produce any evidence in support of his argument, as was his burden, it does not matter whether Gramm was a current employee of Airborne at the time of her dinner with Forrester, or whether Nystul might have been mistaken in concluding that Forrester had violated Airborne's anti-harassment policy:  "To show that an employer's reason for termination is pretextual, an employee "'*cannot simply show that the employer's decision was wrong or mistaken*, since the factual dispute at issue is whether discriminatory animus motivated the employer, *not whether the employer is wise, shrewd, prudent, or competent*.'"  [Citation.]  To meet his or her burden, the employee "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,'"' and hence infer ""'that the employer did not act for [the asserted] non-discriminatory reasons.'"'  [Citation.]  '[*I*]*f nondiscriminatory*, [*the employer's*] *true reasons need not necessarily have been wise or correct.*  [Citations.]  While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.  Thus,

28

"legitimate" reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of discrimination.' [Citation.]" (*Featherstone, supra*, 10 Cal.App.5th at pp. 1159-1160.)

Furthermore, "[t]he employee's 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact . . . .' The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination.' [Citation.]" (*Featherstone, supra*, 10 Cal.App.5th at p. 1159.)

Airborne's stated reason for terminating Forrester's at-will employment is indisputably facially unrelated to prohibited bias. By failing to oppose the motion for summary judgment, Forrester failed to make any showing that would enable a reasonable factfinder to determine Airborne's stated reason to be unworthy of credence so as to infer Airborne did not act for the asserted nondiscriminatory reason. In the absence of a triable issue of material fact, Airborne was entitled to summary judgment in its favor. (§ 437c, subd. (c) ["The motion for summary judgment *shall* be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," italics added].)

In light of the foregoing, the trial court did not err by granting Airborne's unopposed motion for summary judgment after concluding Airborne produced evidence showing its decision to terminate Forrester's employment was for a legitimate, nondiscriminatory reason and not for a discriminatory or retaliatory reason.

Forrester's claim for wrongful termination in violation of public policy was entirely based on his claims Airborne discriminated and retaliated against him in violation of FEHA. (See *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252 ["Apart from the terms of an express or implied employment contract, an employer has no right to terminate employment for a reason that contravenes fundamental public policy *as expressed in a constitutional or statutory provision*," italics added].) For the reasons

29

discussed *ante*, there are no triable issues of material fact as to Forrester's FEHA claims. Consequently, his claim for wrongful termination in violation of public policy fails as a matter of law.  (See *Wilkin, supra*, 71 Cal.App.5th at p. 831; *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229 [because the plaintiff's FEHA claim failed, the plaintiff's wrongful termination claim also failed].)

1. Forrester Files No Opposition to the Motion for Summary Judgment but Instead Files (1) a Motion Seeking Reconsideration of the Court's Denial of *Airborne's* Ex Parte Request to Continue the Hearing on that Motion; and (2) an Opposition to Airborne's Notice of Non-Opposition to the Motion for Summary Judgment, Both of Which He Contends Were Erroneously Denied

On March 3, 2021, Airborne applied ex parte for an order continuing the hearing on Airborne's motion for summary judgment from March 18 to May 13 to "allow Judge Salter, who has been presiding over this litigation since its inception in July 2018, to preside over the Motion following his return from sitting Pro Tem in the Court of Appeal."[9]  Airborne had given Forrester notice of its ex parte application around 10:00 p.m. on March 2 and asked Forrester whether he opposed the application and whether he would appear at the hearing on the application scheduled for March 4 at 11:45 a.m.  Early in the morning March 4, Forrester responded by e-mail stating, "Although I do not believe that continuing a motion for summary judgment in order to retain the judge falls within the requirements of an ex part[e] application, I will not oppose the motion to continue . . . ."  He stated he would not appear at the hearing, and added: "Assuming that Judge Salter grants your second ex parte motion . . . I will thus discontinue my in-process opposition to your March 18 sj [summary judgment] that was due today (March 4, 2021, which is the required 14 days prior to the sj hearing), as it will

---

[9]  Judge Salter had been the primary, but not the only, judicial officer involved in this case at this point in the litigation.

become moot." He also stated, however, that he would be opposing the motion for summary judgment.

Airborne appeared ex parte on its application before Judge Richard Oberholzer as scheduled. In its March 4, 2021 minute order, the court stated that, after reading and considering the ex parte application and Airborne's argument, and noting the lack of opposition, the ex parte application was denied. Around noon on March 4, Airborne's counsel informed Forrester by e-mail that the trial court had denied the ex parte application to continue the hearing. Forrester responded, "Not surprised!"

On March 8, Airborne filed a notice of non-opposition to its motion for summary judgment. The notice stated that although Airborne had served the notice of motion for summary judgment on Forrester months earlier on December 28, 2020, and the opposition was due on March 4, Airborne had not received any opposition to date.

Forrester never filed an opposition to the motion for summary judgment or a request for leave to file a late opposition. Instead, on March 13, he filed a motion for reconsideration of the trial court's denial of Airborne's ex parte application seeking a continuance of the hearing on the motion for summary judgment. That motion was set to be heard April 1.

On that same day, he also filed an opposition to defendant's notice of non-opposition to the motion for summary judgment. In that document, Forrester did not request the opportunity to file an opposition to the motion for summary judgment but stated: "This Opposition is based on the grounds that [Airborne's attorney] did not include [Forrester]'s responsive email to either [Airborne]'s Ex-Parte Application to Continue the Hearing for Summary Judgment/Adjudication . . . or [his] Declaration in Support of the Ex Parte Application. Plaintiff believes that the court may not have been aware and considered Plaintiff's email prior to arriving at the court's denial decision of the ex-parte application. Plaintiff's responsive email dated March 4, 2021, at 5:33 a.m. stated that Plaintiff would not oppose the ex-parte application for [summary

31

judgment/summary adjudication] and also would not appear at the March 4, 2021, ex-parte . . . hearing at 11:45 a.m." (Italics omitted.) Forrester stated that had Airborne "included these new facts . . . the court may have likely not denied the ex-parte application." (Italics omitted.) He also argued Airborne's counsel's ex parte application was deficient which "contributed to the court's denial of the ex parte application." (Italics omitted.) Forrester stated Airborne's deficient ex parte application was designed to interfere with his efforts to complete "the major task of generating his Opposition" to the motion for summary judgment. He further stated: "If it were not for Defendant's purposeful interruption and words of no prejudice but benefit to Plaintiff as reasons for the second ex parte, Plaintiff would have timely completed his Oppositions to the DMSJ/A without issue." (Italics omitted.)

At the telephonic hearing on the motion for summary judgment as noticed on March 18, 2021, at which both Airborne and Forrester appeared, the trial court granted Airborne's motion for summary judgment. Forrester did not explain why he never filed or sought leave to file any opposition to the motion for summary judgment.

At the telephonic hearing on April 1, the trial court denied Forrester's motion for reconsideration of the denial of Airborne's ex parte application for a continuance on the ground there was "no proof of service either separately filed, attached to the motion or attached to the declaration." (The copy of the motion for reconsideration contained within the appellant's appendix does not include a proof of service.)

In his opening brief, Forrester does not challenge the trial court's denial of his motion for reconsideration for lack of a proof of service. Instead, he argues the trial court erred by denying *Airborne's* ex parte application to continue the hearing on the summary judgment because (1) it constituted a lack of cooperation with Judge Salter's prior order granting an ex parte request to continue the trial date; (2) Forrester did not oppose the ex parte application; and (3) it "set in motion [Forrester]'s inability to complete his opposition to [Airborne]'s motion for summary judgment and ultimately

32

precluded [Forrester] from addressing at summary judgment [Forrester]'s several irrefutable inconsistencies and fabrications, including doctored text messages and deposition transcript, and bad-faith declarations, as well from addressing [Forrester]'s claims in his [third amended complaint]."

Assuming Forrester has standing to challenge the court's denial of Airborne's ex parte application, his arguments are without merit. First, Judge Salter's prior order continuing the trial date in the matter had nothing to do with the hearing on the motion for summary judgment and whether that date should be continued. Furthermore, there was no reason for the hearing on the motion for summary judgment to be continued until Judge Salter became available to rule on the motion. The motion could be decided by any bench officer.

Second, Forrester has cited no legal authority and we have found none that requires a trial court to grant an ex parte application or motion simply because it is unopposed.

Third, and most importantly, Forrester has failed to show how the court's denial of Airborne's ex parte application to continue the hearing on the motion for summary judgment had anything to do with Forrester's ability to oppose the motion for summary judgment itself. The record shows Forrester was aware his opposition was due on March 4 when he received notice of Airborne's ex parte application on March 2. He claimed his opposition was "in-process." He stated he was going to assume the court would grant the continuance because it had previously continued the trial date in the case and hold off on completing his opposition.

Forrester's determined course of action was not directed or even suggested by the court or Airborne. When Forrester's assumption proved to be incorrect, he not only failed to file a timely opposition, he also never sought leave to file a late opposition to the motion for summary judgment. Contrary to Forrester's statement in his opening brief that he had not been "given the opportunity to state why he had not filed his

Opposition to summary judgment," the reporter's transcript shows he not only had the opportunity to address the court at the hearing on the motion for summary judgment, but he also argued against the tentative decision. Nevertheless, he did not explain to the court why he never filed an opposition. Although he asserts he was deprived of the opportunity to oppose the motion for summary judgment, he does not explain how or why that is true and the record offers no explanation for his omission.

We also reject Forrester's argument the trial court granted the summary judgment simply because Forrester did not file an opposition or responsive statement. The trial court's minute order set forth the applicable analytical framework and, with citations to Airborne's evidence, explained how it concluded Airborne met its burden of showing Forrester's employment was terminated because of his conduct with Gramm to shift the burden to Forrester. Forrester did not carry his burden of showing pretext because he did not file an opposition and responsive evidence.

We find no error.


2. Contentions of Evidentiary Error

In his opening brief, Forrester argues the trial court erred by considering evidence Airborne relied upon in moving for summary judgment which Forrester contends is hearsay and otherwise unreliable. In his opening brief, Forrester provides detailed commentary on the statements contained in Nystul's declaration among other declarations submitted in support of Airborne's motion. We, however, do not need to analyze whether evidence proffered by Airborne in support of its motion for summary judgment constituted inadmissible hearsay because Forrester has waived his argument by failing to assert any evidentiary objections in the trial court.

In *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 521-522, footnote omitted, the Supreme Court stated: "Section 437c, governing summary judgment motions, contains two waiver provisions relating to evidentiary objections. [¶] Section 437c,

34

subdivision (b)(5) states:  'Evidentiary objections not made at the hearing shall be deemed waived.'  [¶] Section 437c, subdivision (d) states:  'Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations.  Any objections based on the failure to comply with the requirements of this subdivision shall be made at the hearing or shall be deemed waived.'"  In that case, the Supreme Court held that "written evidentiary objections made *before* the hearing, as well as oral objections made at the hearing are deemed made 'at the hearing' under section 437c, subdivisions (b)(5) and (d), so that either method of objection avoids waiver."  (*Id.* at pp. 531-532, fn. omitted.)

Here, Forrester did not file any written objections to the evidence Airborne proffered in support of its motion for summary judgment.  We have reviewed the transcript and confirmed Forrester did not assert any objections to Airborne's evidence at the hearing on the motion for summary judgment either.

Consequently, Forrester has waived his objections to Airborne's evidence.


3.  Forrester's Request for a Statement of Decision

More than three weeks after the trial court granted the motion for summary judgment, and 11 days after the court denied Forrester's motion for reconsideration of the court's denial of Airborne's ex parte application seeking a continuance of the hearing on the motion for summary judgment, Forrester filed on April 12 a request for a statement of decision under section 632 as to the court's denial of Forrester's reconsideration motion only.  Forrester contends the trial court erred by denying the request for a statement of decision.

In denying the request for a statement of decision, the trial court correctly concluded Forrester was not statutorily entitled to one.  "[U]pon the trial of a question of fact," the trial court must issue "a statement of decision explaining the factual and legal

basis for its decision as to each of the principal controverted issues at trial upon the request of any party." (§ 632.) "The requirement of a written statement of decision generally does not apply to an order on a motion, even if the motion involves an evidentiary hearing and even if the order is appealable." (*Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620, 623-624; see *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294 ["Cases decided under section 632 generally have held that a statement of decision is not required upon decision of a motion"].) Forrester cites no case requiring a trial court to issue a statement of decision on a motion for reconsideration brought under section 1008.

In any event, the trial court's minute order denying the reconsideration motion, quoted *ante*, explained the single reason the trial court denied that motion—there was no proof of service. Forrester does not challenge that his reconsideration motion lacked a proof of service. Nothing in the minute order suggests the court's decision turned on a disputed question of fact.

In denying the request for a statement of decision, the trial court observed that Forrester's request was untimely as well. Section 632 requires a request for a statement of decision be made prior to the submission of the matter for decision when "trial is concluded within one calendar day or in less than eight hours over more than one day." The trial court observed that even if Forrester had a statutory right to a statement of decision regarding the denial of his reconsideration motion, "The law and motion hearing lasted less than one day, and both parties—including plaintiff—were present at the hearing. The court's tentative ruling to deny the motion on the ground of lack of proof of service was confirmed in open court before the parties." Forrester, however, did not request a statement of decision until 11 days later after the trial court issued its minute order denying the reconsideration motion.

The trial court did not err by denying Forrester's request for a statement of decision.

36

## DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.